## Case No. 112.

### AIKEN v. FERRY.

[6 Sawy. 79.][1]

Circuit Court, D. Oregon. Nov. 7, 1879.

DECISIONS OF THE LAND OFFICE—RIGHT TO CONTEST—PRE-EMPTION—STATUTE OF FRAUDS.

1. The action of the land office upon the questions of fact arising in the course of its business is conclusive upon other tribunals, unless it appears that such action is the result of fraud or mistake, other than an error of judgment in estimating the value of evidence, or making deductions therefrom; but, for er-

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

ror in the construction or application of the law relating to such business, its decisions may be reviewed and modified or annulled by the courts.

[Cited in Stevens v. Sharp, Case No. 13,410; Shively v. Welch, 20 Fed. Rep. 32.]

2. The pre-emption act requires a pre-emptor to inhabit the tract claimed by him, and this means to abide there,—to actually reside upon the premises until the final proof and payment is made.

3. No one can be heard to question or contest the right of another to a patent for public land until he shows some right in himself in or to the premises.

4. The right of pre-emption is not an interest in the land, but the right to be preferred as a purchaser of a certain portion of the public domain, and it accrues when the settler has complied with the prerequisites of the act by making his settlement and filing his declaratory statement.

5. If a settler under the pre-emption act is a qualified pre-emptor at the time of filing his declaratory statement, he is entitled, as against the United States, to become the purchaser of the premises.

6. The term "proprietor," as used in the inhibition contained in section 10 of the pre-emption act, (5 Stat. 455; Rev. St.. § 2260,) means an absolute and legal owner; and therefore where one owns land in trust for another, or has entered public land with cash or scrip, but has not received a patent therefor, he is not such a "proprietor" thereof, and is therefore not thereby disqualified to acquire the right of pre-emption.

7. Upon an erroneous construction of the law relating to the qualification of a pre-emptor, the land office canceled the entry of A., and issued a patent to F., a junior settler, for a portion of the tract entered by A. *Held*, that F. was a trustee for A. as to such portion, and must convey the same to him on receiving the purchase price thereof.

8. A parol contract in relation to lands, if set out in the bill, is to have the same effect, as against the plaintiff, as if it had been made in writing.

[In equity. Bill by James Aiken against James D. Ferry for injunction. Heard on bill, answer, replication, exhibits, and proofs. Decree for plaintiff.]

Walter W. Thayer, for plaintiff.
Rufus Mallory, for defendant.

DEADY, District Judge. This suit is brought to enjoin the defendant from enforcing a judgment of this court for the recovery of the possession of the south-east quarter of the south-east quarter of section 2, and the north-east quarter of the north-east quarter of section 11 of township 27 south, of range 13 west, of the Wallamet [Willamette] meridian and that the patent to said premises heretofore issued by the United States to George W. Pratt, the vendor of the defendant, be held to inure to the benefit of the plaintiff, and that the defendant be required to release his interest therein to the plaintiff. The case was heard upon the bill, answer, replication, and exhibits, and the depositions of numerous witnesses.

The material facts established by the testimony are as follows: In 1863, James Aiken,

the plaintiff, made a settlement and residence upon a defined portion of the public lands near the Isthmus slough in Coos county, Oregon, and within what proved to be township 27 south, of range 13 west, of the public surveys, with a view to acquire the title thereto under the pre-emption laws of the United States; and cultivated the same and made substantial and valuable improvements thereon. In the early part of 1869, and after the line between the said township 27 and township 26 had been run, the plaintiff concluded that the area of one hundred and sixty acres, which should include his then dwelling-house, would not extend to his southern and eastern line, and therefore built another dwelling-house upon the tract further east and south, and on what is now known as the south-west quarter of the south-east quarter of section 2 of said township 27, and within the limits of the clearing and cultivation made by him before that time, and moved therein in the month of May of said year, and continued to reside there, and improve and cultivate the premises, including a portion of the legal subdivisions in controversy, until after April 16, 1872.

The eastern line of the plaintiff's original location was a line drawn due north and south from a large dead fir tree standing in the north-east quarter of the north-east quarter of section 11, and two hundred and seventy-four feet west of the east line of said sections 2 and 11.

In March, 1869, George W. Pratt was living in a house belonging to the plaintiff near the Isthmus slough, when, upon the suggestion of the plaintiff, he determined to make a settlement upon a quarter section of the unsurveyed public lands lying immediately to the west of the plaintiff's settlement, and said plaintiff went with said Pratt, upon the land, and showed him said dead fir tree and his east line as aforesaid, and it was then and there understood and agreed, by and between said plaintiff and Pratt, that said line should be the actual boundary between their locations, and that if the line of the public survey should not coincide therewith, and either of them was, therefore, required to go beyond said agreed line to the nearest line of said survey in making his declaratory statement and proof of settlement before the register and receiver, he would, as soon as he obtained title to his pre-emption, release or convey the same to the other back to said agreed line or boundary.

In pursuance of this arrangement, Pratt commenced to improve his location, and during the years 1869 and 1870 cleared three or four acres of the land to the east of the agreed line, and cultivated some portion of the same, but continued to reside with his family in the plaintiff's house on the slough. In June, 1870, Pratt commenced to clear a place for a house a short distance to the west of the agreed line, and in the fall of

that year built a small house of sawed lumber thereon, and moved into the same with his family, where he resided until January, 1871. Between this date and February, 1872, he did not reside upon the location. At the latter date he returned to the place, and resided there until the latter part of the summer of 1872, and during the contest between himself and the plaintiff before the register and receiver, when he left the premises permanently. In September, 1870, when Pratt commenced to build this house, the plaintiff went upon the ground and protested against the act as a violation of his right and a breach of the agreement between them. Pratt admitted the agreement, but justified his conduct upon the ground that the plaintiff could not hold the land any way.

Township 21 was surveyed in October, 1871, and the plat and survey were approved in March, 1872.

On June 21, 1869, the plaintiff filed with the register and receiver his declaratory statement as a settler upon "unoffered and unsurveyed" lands, describing therein the premises by metes and bounds, and as "containing one hundred and sixty acres, more or less;" and on March 30, 1872, made his declaratory statement before the same officers as a settler upon lands "not subject to the private entry," and described as the south half of the south-east quarter of section 2, and the north half of the north-east quarter of section 11 in said township 27, and alleging a settlement thereon, on May 20, 1869; and on April 16 thereafter made final proof and payment therefor, and obtained a certificate from the officers aforesaid, to the effect that he had become the purchaser under the pre-emption laws of the said legal subdivisions of the public lands. On April 17, 1872, Pratt made a declaratory statement before the register and receiver as a settler under the pre-emption laws, for the south-west quarter of the south-west quarter of section 1, the south-east quarter of the south-east quarter of section 2, the north-east quarter of the north-east quarter of section 11, and the north-west quarter of the north-west quarter of section 12, alleging a settlement thereon March 1, 1869; and on the thirteenth of May thereafter made final proof and payment therefor. After Pratt had filed his declaratory statement, alleging a settlement prior to that claimed by the plaintiff in his statement, the latter filed an amended statement, alleging that his settlement actually commenced in 1863, and that he had not deemed the date of the commencement of his settlement material, and asked to have his declaratory statement amended accordingly. On August 2, 1872, the commissioner of the general land office suspended Pratt's entry because it was in conflict with the plaintiff's, and directed the register and receiver to appoint a day to hear the parties to the conflict. The contest was

then heard before the register and receiver, who thereupon transmitted the case to the commissioner with their opinion in favor of the entry of Pratt.

On June 24, 1874, the commissioner decided the contest in favor of Pratt, upon the ground "that at the time Aiken filed for the tract claimed by him he was not a qualified pre-emptor, and has no right to the land in dispute," because on January 22, 1872, he "was the owner in his own name" of section 36, township 26, range 13 west, although on March 12 of the same year he had sold and disposed of an undivided three-fourths of the same; and because on June 1, 1871, he, jointly with five others, located two thousand and eighty acres of public lands in the district of lands subject to sale at Roseburg, Oregon, upon agricultural college scrip issued to the state of Texas, and on the same day entered with said others for cash, at the land office in said district, three thousand five hundred and twenty acres, and on February 1, 1872, entered at the same place and in like manner one thousand five hundred and twenty acres, of public land, thereby becoming the owner of a one-sixth interest in seven thousand one hundred and twenty acres of land, which entries and location were then in force and the interest of Aiken therein still owned by him. On August 5, 1875, the acting secretary of the interior affirmed the decision of the commissioner, and on October 1, 1875, a patent was issued to Pratt in accordance therewith. The opinion of the commissioner also finds that Pratt commenced "a bona fide settlement on the tract claimed by him," on March 1, 1869, but that his residence thereon did not commence until 1870. It ignores the amended declaratory statement of the plaintiff, and gives the date of his original one incorrectly as April 5, instead of March 30, 1872; and also states the number of acres of land located by the plaintiff and others with agricultural college scrip incorrectly at two thousand two hundred and eighty acres instead of two thousand two hundred and forty. But the decision of the commissioner in favor of the entry of Pratt and against that of the plaintiff was not made upon the question of the priority of settlement, but solely and explicitly upon the ground that Aiken was disqualified to enter lands as a pre-emptor on account of his interest in other entries and locations aforesaid; which decision is alleged by the plaintiff to have been erroneous.

On December 22, 1875, Pratt conveyed the premises included in his entry to the defendant for the nominal consideration of eight hundred dollars cash in hand, but in fact for three hundred dollars cash and a promise to pay the remaining five hundred dollars when the right to the eighty acres, involved in this suit, should be finally determined in favor of Pratt, and the same is not yet paid.

This court is now asked to review the action of the land office in this matter, and the question arises at the threshold of the inquiry how far such action is binding and conclusive upon the courts. The general rule on the subject is very clearly laid down by the supreme court, but, owing to the nature of the subject, some difficulty and differences of opinion will sometimes rise in the application of it. In Johnson v. Towsley, 13 Wall. [80 U. S.] 83, Mr. Justice Miller, in delivering the opinion of the court, after admitting "the general doctrine that, when the law has confided to a special tribunal the authority to hear and determine certain matters arising in the course of its duties, the decision of that tribunal within the scope of its authority is conclusive upon all others," and that the action of the land office in issuing a patent for any of the public land, subject to sale, is conclusive of the legal title wherever this title must control, defines and limits the scope of judicial inquiry in such cases as follows:

"On the other hand, there has always existed in the courts of equity the power, in certain classes of cases, to inquire into and correct mistakes, injustice, and wrong in both judicial and executive action, however solemn the form which the result of that action may assume, when it invades private rights; and by virtue of this power the final judgments of courts of law have been annulled or modified, and patents and other important instruments, issuing from the crown or other executive branch of the government, have been corrected or declared void, or other relief granted. No reason is perceived why the action of the land office should constitute an exception to this principle. In dealing with the public domain under the system of laws enacted by congress for their management and sale, that tribunal decides upon private rights of great value, and very often, from the nature of its functions, this is by a proceeding essentially ex parte, and peculiarly liable to the influences of frauds, false swearing, and mistakes. These are among the most ancient and well established grounds of the special jurisdiction of courts of equity, just referred to, and the necessity and value of that jurisdiction are nowhere better exemplified than in its application to cases arising in the land office."

In the subsequent case of Shepley v. Cowan, [91 U. S.] 340, Mr. Justice Field, in speaking for the court, says, that if the officers of the land department "err in the construction of the law applicable to any case, or if fraud is practiced upon them, or they themselves are chargeable with fraudulent practices, their rulings may be reviewed and annulled by the courts; * * * but for mere errors of judgment upon the weight of evidence in a contested case before them, the only remedy is by appeal from one officer to another of the department, and perhaps, under special circumstances, to the president."

Guided by the rule furnished by these cases, it is evident that this court can not review the action of the land office, however erroneous, if fairly and regularly had, upon the mere question of fact, as to which was the prior settler upon the disputed premises, Aiken or Pratt. And therefore, although to my mind it is as plain as proof can make it, that Pratt did not even commence to make his settlement upon the disputed premises until long after Aiken did his, and that he did not commence to inhabit it or actually reside upon the same, or erect a dwelling thereon, until the fall of 1870, at least eighteen months after the plaintiff had made his actual residence thereon, and years after he had cultivated and improved the same, still this court can not disregard or set aside a contrary finding by the officers of the land office, unaffected by fraud or mistake other than error in estimating the value of evidence. But if the determination of that question hinged upon a question of law,—as for instance, is it not absolutely necessary, to constitute a settlement under the pre-emption law, that the pre-emptor should erect a dwelling on the land and actually reside upon the same?—and the decision of the land office thereon was erroneous, then this court, upon a proper case made, would set it aside. Now, in this case, so far as appears, there was no actual decision as to which, Aiken or Pratt, was the prior settler in fact, but the contest seems to have been made upon the point that Aiken was not a qualified pre-emptor, and therefore could not make a legal settlement. The right of pre-emption is given by section 10 of the act of September 4, 1841, (5 Stat. 455; section 2259, Rev. St.,) which provides that any one of a specified class of persons who may perform certain acts with reference to the public lands, shall be entitled to enter not more than one hundred and sixty acres thereof at the minimum price. These acts are: 1. Make a settlement in person on such lands; 2. Inhabit and improve the same; and 3. Erect a dwelling thereon. Now, nothing short of the performance of these acts makes a person a qualified pre-emptor of the public lands, or constitutes a settlement thereon. Inhabitancy, an abiding or actual residence upon the land, is required, and until this begins a settlement is not made. Therefore, admitting the facts which the commissioner says are shown by the evidence, as a matter of law, it is plain that Pratt did not make a settlement upon the disputed premises until the fall of 1870, when he erected a dwelling thereon and commenced to inhabit the same; and that is confessedly long subsequent to the date of Aiken's settlement. But if the plaintiff was not a qualified pre-emptor, he cannot be heard to object to the validity of Pratt's entry, which is, so far as he is concerned, a matter wholly between the lat-

ter and the United States. The plaintiff must first show in himself some right in or to the premises before he can question the validity of the defendant's title. Stark v. Starrs, 6 Wall. [73 U. S.] 418.

The material question, then, to be considered is, was the plaintiff a qualified pre-emptor? The pre-emption act (section 10, supra; Rev. St. § 2260) provides that "no person who is the proprietor of three hundred and twenty acres of land in any state or territory of the United States * * * shall acquire any right of pre-emption under this act." This "right of pre-emption" is not an interest in the land, but only the right to be preferred as a purchaser of a certain portion of the public lands at the minimum price, irrespective of its real value. Myers v. Croft, 13 Wall. [80 U. S.] 296; 10 Op. Atty. Gen. 57. Such right must accrue upon the performance of the acts on account of which it is given. These are the settlement on the land, including its improvement and inhabitancy, and the filing of the declaratory statement. If upon the filing of this statement the settler is a qualified pre-emptor, as against the United States, he is entitled to make the purchase, although he may not have been so when he went upon the premises, and by a parity of reasoning if thereafter and before he makes the entry he should become the owner of three hundred and twenty acres of land by inheritance or otherwise, he would not be thereby disqualified to make the purchase. True, the proof of the performance of these acts and the qualification of the settler must be furnished to the officers before the purchase can be made or the right of pre-emption exercised. But this is only the appointed means of making evident to the land office the facts which already exist, and on account of which the right of pre-emption is given.

Tried by this construction of the law, was the plaintiff a qualified pre-emptor when he filed his declaratory statement, and thereby made his claim to be a pre-emptor on March 30, 1872? And first as to his alleged interest in section 36 aforesaid. The fact is, as it clearly appears from the evidence, that the plaintiff did not acquire the whole of this section in January, 1872, from the state of Oregon, but only the southwest quarter thereof on January 22 of that year. The other three quarters of the section were conveyed to him by different persons on February 12, 13, and 16, 1872, respectively, but, in fact, in trust for others who furnished the money to pay for them, to whom the plaintiff conveyed the same immediately; but there being some defect in the conveyance, it was returned and another given in its place, which was not accomplished until March 12, 1872. A person who owns land in trust for others is not a proprietor of such lands within the inhibition of the pre-emption act, and is therefore not thereby disqualified from becoming a pre-emptor. But it

does not appear that the evidence showing that the plaintiff held the three quarters of this section in trust only was before the land office, and therefore it does not appear that the question whether a mere trustee is a "proprietor," within the meaning of the pre-emption act, was before the commissioner or passed upon by him.

But the commissioner did find that the plaintiff had disposed of three quarters of this section, on March 12, 1872, and therefore was only the proprietor of one hundred and sixty acres of the same when he made his declaratory statement. His interest, then, in this section did not disqualify him from acquiring the right of pre-emption when and as he attempted to, and the ruling of the land office to the contrary was erroneous.

As to the scrip and cash entries for seven thousand one hundred acres of land, the case stands thus: Upon the evidence it clearly appears that the plaintiff, on February 19, 1872, conveyed all his interest in these entries to his brother, A. G. Aiken, who on October 12, 1875, reconveyed the same to him; so that upon the face of the record, the plaintiff had no interest in these lands when he filed his declaratory statement. The bona fides of these conveyances has been questioned by counsel, but the only ground for suspicion is the admitted facts and circumstances of the transaction. And I think that these are enough to put the party asserting that they were made in good faith to the proof of the same.

Upon this view of the matter, evidence has been offered tending to show the bona fides of the transaction. But it is not necessary to pass upon this question here. It does not appear that these conveyances were before the land office; and if they had been, and a question arose there as to their integrity, the decision thereon would not be subject to review here, upon the question of fact simply.

And this brings me to the question whether, on March 30, 1872, the plaintiff was the "proprietor" of the one sixth or any portion of the land included in the entries of June 1, 1871, and February 1, 1872. An entry of lands for cash or scrip gives the party making it a right to a patent therefor, if it be found regular and valid. But it does not pass the title which remains in the United States, until the patent issues. The person making the entry, if there be no valid objection thereto, as against the government, has a right to a conveyance of the legal title, but as the government cannot be sued without its consent, such a right is little else than a mere moral one. After the entry, and notwithstanding it, congress has the power to withdraw the land from sale, reserve it for public purposes, or dispose of it to another. True, in the latter case, a court of equity may compel the patentee to convey to the one who has the prior equity by reason of his prior entry. Be-

sides, the entry may prove illegal and unauthorized, and therefore be canceled and set aside.

I am aware that some expressions in the opinion of the court, in Frisbie v. Whitney, 9 Wall. [76 U. S.] 191, and the Yosemite Valley Case, 15 Wall. [82 U. S.] 86, particularly the latter, are to the effect that when a settler under the pre-emption law has complied therewith, and paid the price of the land, he has a vested interest in the premises of which he cannot be deprived. But certainly this interest is not the legal title or estate which is necessary to make one a proprietor or owner in the full and legal sense of the word. Such an interest is nothing but an equity which there is no means of enforcing, at least so long as the government retains the legal title. In my judgment, the proprietorship contemplated by the pre-emption act is a legal and absolute one, and not the mere equity of a land office entry, which may or may not ripen into such ownership.

It follows from these premises, that the plaintiff at the time of filing his declaratory statement, or at any time thereafter pending his entry and contest, was not the proprietor of three hundred and twenty acres of land, and therefore not disqualified to acquire a pre-emption right. The patent to Pratt so far as it includes the south-east quarter of the south-east quarter of said section 2, and the north-east quarter of the north-east quarter of said section 11, was therefore wrongfully issued upon an erroneous construction of the law, and he took the same in trust for the plaintiff, who was entitled to the patent therefor. The defendant took his conveyance from Pratt of this eighty acres without consideration and with knowledge of all the circumstances.

The equity of the case is with the plaintiff, and the only question is whether the defendant shall be required to convey to him the whole of this eighty acres, or only that portion of it lying to the west of the boundary agreed upon between Aiken and Pratt. Pratt having repudiated the agreement and the defendant denied it, the latter can not well now ask for its recognition and enforcement by the court. It may also be objected that the agreement is invalid, not being in writing. But so far as the plaintiff is concerned, that difficulty is obviated by the fact that the agreement has been set out by him in his bill, and thereby established with the same certainty and effect as if originally reduced to writing. Therefore, in granting him the relief sought, effect will be given to this agreement as set forth in his bill. Story, Eq. Pl. §§ 761–766.

The decree of the court will be that the defendant be enjoined from enforcing his judgment in this court against the complainant, except to recover the possession of that portion of the south-east quarter of the south-east quarter of section 2, and the north-east quarter of the north-east quarter of section 11 aforesaid, lying east of the line running parallel to the eastern boundary of said legal sub-divisions and one hundred and seventy-four feet west of the same; and that within sixty days hereof, the defendant convey to the plaintiff by a proper conveyance, with sufficient covenants against his own acts, to be approved by the master of this court, the remainder of said legal subdivisions—the plaintiff first paying to the defendant the sum of one dollar and twenty-five cents an acre therefor, either in lawful money or by applying such an amount upon the costs and expenses incurred by him in the prosecution of this suit, and that the defendant pay the plaintiff said costs and expenses.