### SHIVELY *v.* WELCH and others.

*(Circuit Court, D. Oregon.  April 21, 1884.)*

1. DECISION OF THE TIDE-LAND COMMISSIONERS.
   The commissioners under the acts of 1872 and 1874, to dispose of the state tide lands, were authorized to decide who was entitled, in certain cases, to be preferred as a purchaser thereof, and their determination of the matter cannot be questioned elsewhere, except for an error of law or a fraud extrinsic and collateral to the contest, by which a full and fair hearing of the matter was prevented.

2. SETTLER UNDER THE DONATION ACT.
   It does not appear that James Welch was ever a "settler," under the laws of the provisional government or the donation act, upon the donation patented to

John M. Shively and wife; and if he was, upon his abandonment of all such claim thereto in 1860, and before he was entitled to the grant, his wife had no interest in it or the consideration received therefor.

3. CONVEYANCE TO ONE PERSON UPON A CONSIDERATION MOVING FROM ANOTHER. In 1860 John M. Shively, in consideration that James Welch abandoned his claim to be a "settler" upon the former's donation claim, conveyed a certain portion thereof to said Welch, and a like portion, including blocks 5 and 13, in "Shively's Astoria," to his wife Nancy. *Held,* that Nancy did not hold said blocks under her husband, but the grantor, Shively, and therefore she was entitled under the acts of 1872 and 1874 (Sess. Laws, 129, 76) to purchase the tide land in front of said blocks, although her husband had quitclaimed the same to Shively in 1850.

Suit to Declare the Defendants Trustees, and for a Conveyance.

*Frederick K. Strong,* for plaintiff.

*E. C. Bronaugh,* for defendants.

DEADY, J. This suit was brought by the plaintiff, John M. Shively, to have the defendants, Nancy Welch, James W. Welch, Joseph N. Dolph, and W. W. Upton, declared to be the trustees of the plaintiff for certain tide lands conveyed to said Nancy by the commissioners for the sale of school lands, under and by virtue of the act of October 28, 1872, (Sess. Laws, 129,) on August 28, 1876—the same being known as block 111, in front of shore block 13, in the town of Astoria, Oregon, and the west half of each of the blocks 41, 46, and 145, lying in front of the west half of block 5 in said town, and of the alleged value of more than $5,000. The cause was heard on a demurrer to the amended bill, from which latter it appears that in March, 1844, the plaintiff, John M. Shively, was a "settler," under the laws of the provisional government, on a tract of public land on the south bank, and near the mouth, of the Columbia river, containing 640.56 acres, and laid off a town thereon, containing 121 blocks, divided into lots, and extending from ordinary high water to the southward, and commonly known as "Shively's Astoria;" and on April 18, 1845, he bargained and sold, by an instrument in writing, to James Welch the undivided one-half of said land and blocks, except about 20 lots; that prior to March 13, 1850, the plaintiff, with the consent of Welch, laid off additional blocks, numbered from 122 to 150, both inclusive, the same being situate almost wholly in front of said tract of land, and between ordinary high and low water mark; and on said day said Shively and Welch divided the premises, so far as surveyed into blocks, between them, and by their deeds quitclaimed the same to each other; that upon the passage of the donation act (September 27, 1850, 9 St. 497) the plaintiff became and was a qualified married "settler" on said land under said act, and had been such settler for more than four years prior thereto, to the knowledge of said Welch, who, nevertheless, now disputed the plaintiff's right to hold said land as a donation under said act, by reason of the premises; and for the purpose of settling said dispute, on February 18, 1860, the plaintiff and his wife, Susan L., in pursuance of an arrangement with said Welch to that effect, conveyed, by deed, with a general warranty, to

the latter and his wife, Nancy, each, one-fourth of the unplatted portion of said donation, and certain of the blocks aforesaid, in number about one-fourth of the whole number surveyed; that the conveyance, to said Nancy included the blocks 5 and 13 aforesaid, and was made to her at the request of her husband, and upon the consideration, and for the purposes aforesaid, and not otherwise; and thereupon said Welch ceased and withdrew his opposition to the plaintiff's claim to the premises as a donee under the donation act, and thereafter, on January 24, 1866, a patent was duly issued thereunder, conveying the east half of the donation to the plaintiff, and the west half to his wife, Susan L.; that blocks 111 and 145 are wholly below ordinary high tide, and were represented on the map of "Shively's Astoria" as being each 300 feet square, bounded on all sides by streets, and were included in the quitclaim of March 13, 1850, made by Welch to the plaintiff, and said block 111 is immediately in front and north of the shore block 13, in the west half of said donation, from which it is separated on said map by Wall street, while block 145 is immediately in front and north of shore block 5, in the east half of said donation, from which it is separated on the map by Hemlock street; that both Wall and Hemlock streets are now below ordinary high water mark, and block 13 is more than one-fourth, and block 5 nearly one-sixth below said line; but in 1856, at the date of the official survey of the Shively donation, a small portion of the west end of Wall street was above the meander line, while such line ran diagonally through the whole length of Hemlock street, in front of block 5, so as to leave about three-fourths of the same above said line, and about one-fifth of block 13 was below said line.

On March 7, 1881, the plaintiff and wife conveyed the latter's half of the donation, with certain exceptions not material to this case, to Milton Elliott, and on the day following he conveyed the same to the plaintiff. On September 3, 1875, Nancy Welch applied to the commissioners of the state for the sale of school lands to purchase the tide lands lying in front of blocks 5 and 13, under the state act of October 28, 1872, "to provide for the sale of tide and overflowed lands on the sea and shore coast," (Sess. Laws, 129,) and the act of October 29, 1874, (Sess. Laws, 76,) amendatory thereof, as the owner of said blocks, and represented that said tide land was not held by any person claiming by, through, or under her, or any one through whom she claimed, which representation the bill alleges to have been false to the knowledge of the party making it, who then knew, as it is alleged, that the plaintiff was the "equitable owner" of the property, and entitled to purchase the same from the state, and that about August 28, 1876, she obtained from said commissioners a conveyance of the tide land in front of block 13 and the west half of block 5, including block 111 and the west half of block 145, while the plaintiff, at the date of both said application and conveyance was an applicant, in due form of law, for the purchase of said tide lands,

and was the only person entitled to purchase the same under said act. On October 19, 1876, the defendants James Welch, Joseph N. Dolph, and W. W. Upton, procured a conveyance from said Nancy Welch of an undivided one-fourth of said tide lands; and it is alleged that the "title" of said Nancy is "fraudulent and void," as against the plaintiff, and that the conveyance to her co-defendants was made without consideration, and received by them with full knowledge of the premises.

The defendants for cause of demurrer to the amended bill, among others, allege: (1) That the question of who was entitled to the conveyance from the state was determined by the commissioners, and their decision, in the absence of fraud, cannot be reviewed by the court; (2) that Nancy took the land and blocks conveyed to her by the plaintiff "free from any contracts of her husband concerning the appurtenances or riparian rights belonging to said land;" and (3) that there is no equity in the bill.

The location of blocks 41 and 46 is not definitely shown by the bill, but it may be gathered therefrom that they are in front of block 5 and beyond block 145, in which case they are in deep water, and below the line of ordinary low tide, and therefore not tide lands. Besides, it appears from the bill that block 41 is in the deed of February 16, 1860, executed by the plaintiff and wife to Nancy Welch, with warranty, which estops the plaintiff from now claiming any right or interest therein as against said Nancy. This being so, counsel for the plaintiff consents that the bill may be considered dismissed as to these two blocks.

The act of 1872, under which Nancy Welch purchased the tide land in question, provides that the owner of any land fronting on or bounded by the shore of any "bay, harbor, or inlet on the sea-coast" of Oregon, shall have the right to purchase from the state all the tide land belonging thereunto in front of such owner. Section 1. The commissioners for the sale of school lands—the governor, treasurer, and secretary of state—are authorized to sell such lands to the owner of the land that abuts or fronts thereon, on proof of such ownership, (sections 2, 3;) and if the application to purchase is not made by the owner within 12 months from the passage of the act, then such tide land may be purchased by any citizen or resident of Oregon. Section 5. By the amendment of 1874, section 1 was extended to tide lands on rivers and their bays in which the tide ebbs and flows," excluding the Wallamet, "the tide and overflowed lands" on which were thereby directly granted to the owners of the adjacent property; and section 5 was amended so as to allow the adjacent owner three years from the passage of the act within which to apply for the purchase of tide lands, and to provide that upon an application to purchase by any one other than the owner of the adjacent land or his grantee, notice thereof shall be given to such owner or grantee, and to any person in the possession of such tide lands or the improver of

the same, who shall have 60 days after service of such notice to make application for the purchase of such lands, which application shall have preference over all others; and all applications to purchase tide lands shall be accompanied by an affidavit of the applicant "setting forth the fact that such land is not held by any other person under a deed from said applicant or any person under whom he holds."

The land in the territory of Oregon, including the beds and shores of the navigable waters below ordinary high tide or water, belonged, prior to the admission of the state into the Union, to the United States, as proprietor, and was subject to its jurisdiction as sovereign. Upon the admission of the state into the Union, such bed and shores, not otherwise disposed of by the United States, became the property of the state in its sovereign capacity, and subject to its jurisdiction and disposal. *Pollard's Lessee* v. *Hagan*, 3 How. 228; *Barney* v. *Keokuk*, 94 U. S. 336; *Shively* v. *Parker*, 9 Or. 504. The United States, so far as appears, never undertook to dispose of any of the shore or tide lands in Oregon during the territorial period, and therefore, upon the admission of the state into the Union, on February 14, 1859, (11 St. 383,) the same became subject to the control and disposition of the latter. In pursuance of this power, the state has provided for the sale and disposition of these lands by the passage of the act of 1872 and the amendment of 1874. Under them, Nancy Welch, as the owner of the adjacent highland, became the purchaser of the parcels of tide land known in this suit as blocks 111 and the west half of 145. But it is alleged that the purchase was fraudulent on her part, because she falsely represented herself to be entitled to purchase the same in preference to the plaintiff. It does not appear from the bill in what this fraud consists or wherein her representation, as to her qualifications, is false, otherwise than that her conclusion from the admitted facts, as to her right in the premises, may have been erroneous. But the question of Nancy Welch's right as a preferred purchaser arose before the commissioners charged with the disposition of the land upon due notice to the plaintiff, who I suppose had the right and did contest the matter before them, and their conclusion or action in the premises cannot be questioned unless for error in the construction or application of the law, or for some fraud extrinsic and collateral to the contest by which the plaintiff was prevented from having a fair and full hearing before the commissioners. At least such is the rule laid down by the national courts in regard to similar proceedings before the officers of the land department. *Aiken* v. *Ferry*, 6 Sawy. 79; *Vance* v. *Burbank*, 101 U. S. 519, and cases there cited.

In the course of the business before the commissioners the question arose, and was contested, as to which of the two applicants was entitled to purchase from the state the tide land in question. Their action in determining such a question is in all respects analogous to

that of the officers of the land-office in determining a contest before them, and should receive the same consideration when questioned in the courts. Now, there is no such fraud alleged or pretended as would vitiate the decision of the commissioners in this case. So far as appears, Nancy did nothing to prevent a full and fair hearing of the matter by the commissioners, or to hinder or prevent the plaintiff from presenting his claim to them in the best possible light. Presumably, the facts concerning the alleged rights of the adverse applicants were presented to the commissioners as here stated, and there, as here, there being no dispute about them, they, as a question of law, decided the contest in favor of Nancy. And now, whether the matter of law was correctly decided by them is the only question in this case.

It is admitted that Nancy was the owner of the adjacent highland, but it is claimed that the tide land was "held" by the plaintiff under a deed, not from Nancy, but from James Welch, under whom, it is claimed, she "held" the highland; and therefore her right to purchase was subordinate, under the act, to that of the plaintiff. The argument in support of this proposition is that Welch, having, in March, 1850, quitclaimed the tide blocks 111 and 145 to the plaintiff, and the latter having, in February, 1860, at the instance and request of said Welch, and upon a consideration moving from him, conveyed the blocks 5 and 13 to Nancy, therefore Nancy "held" the same under the said Welch, the same person under whom the plaintiff "held" the tide land included in the quitclaim of 1850. Leaving out of consideration the fact that neither Shively nor Welch ever had any right to or interest in this land, or any right to purchase the same, until and except for the act of 1872, and that their quitclaims of 1850 did not estop either of them from asserting and maintaining, as against the other, any after-acquired estate or interest in them, or right to purchase the same from the state, (Rawle, Cov. 409; *Van Rensselaer* v. *Kearney,* 11 How. 322; *Fields* v. *Squires,* 1 Deady, 379; *Lownsdale* v. *Portland,* Id. 15,) it is very clear that Nancy Welch never "held" the blocks 5 and 13 under her husband, James Welch; but I cannot rest this conclusion upon the argument made in its support by the counsel for the defendants. That argument is this: James Welch, at the date of the conveyances to him and his wife, in 1860, was a "settler" on the premises, under the donation act, and in the compromise then made between himself and Shively, in which he abandoned his claim to be such "settler," the one-half of the land and blocks conveyed by Shively, in consideration of such abandonment, was conveyed to Nancy, because, as Welch's wife, she was jointly interested with him in the land upon which he was a "settler" under the donation act, and therefore the consideration for the conveyance from Shively to her moved from her, and not her husband, whereby she "holds" under the former, and not the latter.

But there is no warrant upon the facts stated in the bill, particularly when considered in the light of contemporaneous history, for

concluding that Welch was ever a "settler" upon this land under either the donation act or the laws of the provisional government. True, he lived upon it, but only as the purchaser of certain parcels of the same or an interest thereof under and from such a settler—John M. Shively. After the passage of the donation act, in September 1860, he probably ascertained that his quitclaim from Shively was not sufficient to pass the after-acquired estate which the latter took under the donation act; and therefore, as a means of. compelling him to make the same good, Welch may have threatened and probably did set up to be a "settler" on the land under the donation act. The effect of this claim was at least to embarrass and delay Shively in the assertion and maintenance of his right, as such settler, in the land-office. Hence the so-called compromise, by which Welch abandoned his opposition to Shively's claim to the donation, and the latter conveyed to Welch and wife, with warranty, that which he had quitclaimed to the former in 1850. But even if Welch had been the "settler" on the land, his wife had no interest in the premises until he had complied with the law, so as to be entitled to the grant. His abandonment of the claim prior to that time was his own act, and for his own benefit. She had nothing to relinquish or abandon. *Lamb v. Starr*, 1 Deady, 360; *Vance v. Burbank*, 101 U. S. 520. But Nancy Welch having acquired these blocks 5 and 13, by a direct conveyance from Shively, she "holds" them under him. In other words, she derives her title to them from him. And it is altogether immaterial who furnished the consideration for such conveyance. Because a husband for any reason—as love and affection or a sense of justice—furnishes the means to enable his wife to acquire property, or even purchases the same outright, and directs the conveyance to be made to her, she does not "hold" under him. Welch was not the owner of the property, and she is not his grantee. They are not privies in estate; there is no devolution or transmission of any interest in the property from him to her. But she holds under the grantor in the conveyance through which she derives her title and right, and to which her husband is a stranger.

It follows that Nancy Welch's representation or claim that the tide lands in question were not "held" by any person under a deed from her or any person under whom she "held," was true in point of both fact and law, and the commissioners did not err in preferring her as a purchaser to the plaintiff. The plaintiff is not entitled to any relief on this bill, and the same is dismissed.