UNITED STATES *v.* MINOR.

*(Circuit Court, D. California.    May 13, 1884.)*

PUBLIC LANDS—SETTING ASIDE PATENT FOR FRAUD—PERJURY AND FALSE TESTIMONY.
    Perjury and false testimony in proceedings to obtain a patent to public land is not fraud extrinsic or collateral to the matter tried and determined in the land-office, and will not justify setting aside the patent at suit of the United States.

In Equity.
Before SAWYER and SABIN, JJ.

SAWYER, J. In July, 1883, this court decided the case of the *United States* v. *White*, in which the demurrer to the bill was sustained and the bill dismissed. That case presented the principal question decided for the first time, and was similar to this in all respects, except in that case it did not appear that any private party had acquired, or attempted to acquire, any right in the land patented. But as the United States are the only parties to the record, it is not perceived that the interests of adverse pre-emption claimants can affect the decision on the points determined. If that case was correctly decided, then the demurrer in this case must be sustained, for the reasons then given, and a copy of the opinion in White's case will be filed, as showing the grounds of the decision in this case. See 9 Sawy. 126, and 17 Fed. Rep. 561.

I do not feel entirely certain that the doctrine established in *U. S.*

v. *Throckmorton,* 98 U. S. 68; *Vance* v. *Burbank,* 101 U. S. 519; and *Smelting Co.* v. *Kemp,* 104 U. S. 640, has not been carried too far. If the case of White and the present case are distinguishable from Throckmorton's case, it must be on the ground that the United States did not appear as a formal party by their attorney in this and in White's case and contest the claim made, and consequently did not have their day in court in such sense as to make the point *res adjudicata.* But the United States did not appear in the matter out of which the case of *Vance* v. *Burbank* arose. The question in both cases was investigated and decided by officers of the United States especially authorized to determine upon evidence the questions of fact in favor of or against the government, and parties claiming through the United States. The United States were thus represented by their own officers, empowered to determine the matter on their behalf. No complicity on the part of the officers is averred in this case. If the allegations of the bill be true, they have simply relied upon willfully false testimony, as in other cases decided by the courts upon perjured testimony; and the fraud is not in a matter extrinsic to the matter decided.

If the United States are bound, so far as their interests are concerned, it may possibly still be that any person who had acquired and still held a valid pre-emption right prior and superior to the right of the patentee would not be bound. If so, the legal title in that case has passed from the United States to the patentee, charged with the equitable right of the party having a better right, and he might maintain a bill in his own name to control the title for his own benefit, and that would seem to be the proper proceeding. If such a right could be enforced, it would be because the party having the better right is not bound to take notice of what is going on in the land-office, and he has not had an opportunity to be heard,—has not had his day in court. He would thus stand in a better position than the United States, because his right attached against the United States themselves as well as against the patentee before the proceedings for a patent were commenced; and his right, if the required conditions have been performed, could not be affected without legislation by any action of the land-office. He could not be affected by a proceeding to which he was not a party. As the proceedings in the land-office resulting in a patent are subsequent to the attaching of his right, he is not in privity with the United States in the subsequent proceedings for a patent. His right would be adverse to the patentee. But is he not bound to take notice of the proceedings in the land-office, resulting in a patent? If so, there does not appear to be any good reason why he should not be bound by them.

It may well be said that a pre-emptioner only takes such right as the statute gives him, and that those rights are taken subject to the methods appointed by the statute for ascertaining to whom a patent should issue, and to the issue of patents in the mode appointed;

that he can be entitled to only such notice as the statute itself provides; and that, upon this ground, the regular issue of a patent is conclusive. In this view it would not matter whether any notice is provided for or not. He would be in no better position than the United States.

The act of 1879 (1 Supp. 470) expressly requires the applicant for a pre-emption or homestead entry to file with the register of the land-office notice of his intention to prove up his claim, giving a description of the land, names of his witnesses, etc., and the register must give public notice of the same by publication in the nearest newspaper and by posting for 30 days before the final proofs can be made. Whatever the legal *status* of the case with respect to parties claiming prior rights may have been before, it may well be claimed that the proceedings under this act are in the nature of proceedings *in rem*, of which everybody is bound to take notice; and that parties claiming to have acquired a prior right have due notice, and, as well as the United States, are bound by the action of the land-office in regularly issuing a patent, in pursuance of the modes and forms prescribed by the statute. These observations are made for the purpose of suggesting the points for the consideration of the supreme court, rather than for the purpose of indicating the view adopted in deciding the case.

When the case of White and the three others disposed of at the same time were decided, that being the first time the precise main question arose, I was anxious to have these cases taken to the supreme court at once for an authoritative decision of the points involved, and supposed it would be done; but greatly to my disappointment it was found that the value of the property involved was not sufficient to give the supreme court jurisdiction. No case of the kind is likely to occur soon, involving property of the value of $5,000. A quarter section of government land at the time of pre-emption is rarely worth so much. A number of bills of a similar character have since been filed in this court, and a multitude of others are likely to follow, if it is finally decided that the bill can be maintained. It is of the utmost importance, therefore, to the interests of justice, the stability of titles, and the peace of the community, that the questions presented be correctly and promptly settled. It is my present purpose to withhold the decision in all other cases presenting similar questions until this case is decided by the supreme court.

The question as to when a claim of this kind becomes stale so as to justify a court of equity in refusing to entertain a bill of the kind is also important. Courts ordinarily adopt the statutes of limitations by analogy as to the time when the claim should be deemed stale. There is no statute of limitations of the United States to furnish the analogy. If under section 721 of the Revised Statutes the statute of the state of California may be adopted, then a suit of the kind on the ground of fraud would be barred in three years in the case of a pri-

vate party. Thus, if a party having a prior right has lost it by the issuing of a patent upon perjured testimony, without his having appeared before the land-office to contest the right to a patent, and can maintain a bill to control the title for his use, it is necessary to file his bill within three years after discovering the fraud. But the bill, in this circuit at least, is never filed by the party instigating the proceeding to vacate a patent thus issued. The attorney general is induced to allow the suit to be brought by the United States under the sanction of his name and authority; the party procuring it to be brought giving a bond to the United States to secure the payment of the costs of the litigation. The management of the case is thereupon in fact, in practice, under the general supervision of the United States attorney for the district, intrusted to the private counsel of the party procuring the suit to be brought, and indemnifying the government. If the party in whose interest the suit is usually brought can thus use the name of the United States for his own purposes in a suit which he could and should bring in his own name, then he can evade the limitation, unless such a case should be deemed stale as to the United States under the same circumstances and conditions as when applicable to individuals. Long experience suggests that there is a strong tendency in parties to settle on the public lands, despoil them of their timber or valuable metals, and neither enter the lands themselves nor leave them in a condition for others to enter. If such parties finally lose the land by their willful delay or negligence they are entitled to little sympathy. It has more than once come to my knowledge, judicially, that pre-emption claims are often filed; the land despoiled of all that is valuable; the claims then abandoned; and the operation repeated on other lands.

This case, upon the allegations of the bill, affords an instance of unaccountable negligence and want of attention to what is going on around him on the part of Spence, in whose interest the suit appears to have been brought. According to the bill, Spence, on April 2, 1872, settled upon one 80 of the quarter section patented. The approved plats of survey were filed October 2, 1874. On December 3, 1874, Spence filed his pre-emption declaratory statement for 160 acres of land, including the 80 so occupied; erected a house and other improvements; and continued to reside thereon. On January 31, 1878, he transmuted his pre-emption into a homestead entry, and has since held as a homestead claimant. On April 5, 1880, he filed the necessary affidavit, and made the necessary proofs of his homestead claim, and thereby claimed to become the equitable owner of the land, and entitled to a patent. It further appears that defendant, Minor, on October 23, 1874, filed his declaratory statement for pre-emption claim to a quarter section embracing the 80 so settled upon by Spence in 1872, alleging a settlement on March 20, 1874. On June 23, 1875, he proved up his claim, paid for the land, and received his certificate of entry; and on January 6, 1876, he received

his patent. Thus, according to the bill, while Spence was living on the 80 acres claimed by him two and a half years after his settle-ment, and subsequently to his filing his own declaratory statement, Minor filed his declaratory statement to 80 acres of the same land, proved his claim, and procured his patent two years before Spence transmuted his pre-emption into a homestead claim, and more than four years before Spence made his proofs; and this suit was not instituted till more than three years after Spence finally proved up, and nearly seven years and a half after the patent was issued to Minor. · Such delay under such circumstacces it would seem ought to render the claim stale.

When relief is sought against a patentee of public lands on the suggestion and on behalf of private parties reasonable diligence should be required in seeking the relief, even in the name of the government, if that mode be admissible. If there is such a fraud practised on an adverse claimant as would justify a court in vacating the patent on a bill filed by the United States for his benefit there is such fraud as would authorize the court to charge the legal ·title with a trust on his behalf upon a bill filed by himself, and possibly, as we have suggested, the United States might be bound by the adjudication of the land-office in cases where a claimaint of a prior right might not be thus bound. In all such cases in my judgment it would be far better to leave the parties to litigate their own rights in their own names than for the United States to assume the litigation.

When the United States, upon being indemnified for costs, files a bill to vacate a patent at the instance of an adverse claimant with the sanction and in the name of the attorney general, as attorney of record, the case assumes an apparent dignity and importance which do not properly belong to it, and which it would not otherwise possess. It would seem that if there is a duty imposed on the United States to bring the suit, that duty would impose upon them the corresponding incidental duty to pay the costs.

I apprehend that the lands in such cases as this, at the date of the fraudulent entries complained of, are rarely worth enough to make it an object to litigate, and that an increase in value arising from subsequent events or developments not anticipated at the date of the acts complained of, usually furnishes the incentive to litigation afterwards instituted. In such cases parties should be required to act promptly.

My associate with some hesitation dissents upon the points decided, and at the request of the United States attorney the points of opposition of opinion will be stated by the court. In the mean time, in accordance with the views indicated in the foregoing observations and in the opinion in White's case, the demurrer will be sustained, and the bill dismissed; and it is so ordered.