BISHOP IRON COMPANY v. THOMAS W. HYDE and Others.[1]

July 24, 1896.

Nos. 9990—(222).

Public Land—Pre-emption—Disqualification of Claimant—Adjudication by Land Department—Conclusiveness—Stipulation as to Evidence.

A party claiming the right to pre-empt certain government land filed an application to contest, as invalid, a prior entry, and the contest was being heard by the local land officers. He then voluntarily stipulated into the hearing certain evidence as to his qualifications and right to make a pre-emption, although that question had not been ordered to be inquired into at the contest; but the commissioner of the general land office and the secretary of the interior passed upon the evidence, and held that the party was disqualified to pre-empt the land. *Held*, that by the stipulation he waived his right to object to a consideration of his qualifications and rights as a pre-emption claimant, and the irregular manner in which the officers of the land department proceeded in adjudicating as to such qualifications and rights, and, there being evidence to sustain a finding that he was disqualified and had not a pre-emptor's rights, such finding is conclusive upon him.

Action of ejectment in the district court for St. Louis county against Thomas W. Hyde. After the service of the answer, which included an equitable counterclaim, upon motion of defendant, an order was made making certain persons parties defendant, and requiring them to answer the counterclaim, which order, upon motion of four of said additional parties, was subsequently, by order of Moer, J., vacated as to them. From this order, and also from another order by the same judge, sustaining demurrers of plaintiff and of certain defendants to the counterclaim set forth in the amended answer of defendant Hyde, he appealed. Affirmed.

*John Jenswold, Jr.*, and *John Brennan*, for appellant.

*White & McKeon* and *Billson, Congdon & Dickinson*, for respondents.

COLLINS, J. This was an action of ejectment, plaintiff corporation alleging that it was the owner of $^{13}/_{25}$ of the 40 acres in con-

troversy, and lessee from the owners in fee of the remaining $^{12}/_{25}$, and therefore entitled to the sole and exclusive possession of the entire tract.

The answer admitted that defendant was in possession of the tract, and generally denied all other allegations of the complaint. It then set forth an equitable counterclaim, at great length and with much detail, from which it appears that in 1894 a patent had been issued for said land to one Warren by the general government, and that plaintiff's claim to be the owner of an undivided $^{13}/_{25}$ of the 40 was based upon a deed from Warren, while the plaintiff's rights as lessee were predicated upon conveyances whereby the lessors had succeeded to Warren's title to the remaining $^{12}/_{25}$. It was alleged, with particularity as to the facts, that the patent to Warren was issued erroneously, unlawfully, and in defiance of defendant's right to have the patent issued to him. Judgment was demanded that the title to the land be decreed to be in defendant, and held by plaintiff and other parties named in the answer in trust, and for defendant's use and benefit.

Subsequent to the service of the answer on the plaintiff, defendant, upon such answer, and proof of service of a notice of motion thereof upon plaintiff's attorneys, obtained an order from the court—presumably, upon the provisions of Laws 1895, c. 29, § 1, which is an amendment of G. S. 1894, §§ 5178–5181—bringing into the action plaintiff's lessors, as defendants, and requiring them to answer defendant's counterclaim. Four of these parties so brought into the case appeared, and moved the court for an order vacating and setting aside the order whereby they had been made defendants, upon the ground that it had been improvidently issued. The motion prevailed, and defendant appeals from the order whereby the earlier order was set aside and vacated.

That part of the answer which set forth the counterclaim was then amended, and the plaintiff filed a general demurrer thereto, while certain of the parties brought into the case who had not participated in the motion just mentioned also demurred practically on the same ground. Both demurrers were sustained, and defendant appeals. These appeals were argued and submitted together.

The controversy over the land in dispute, which is a part of the famous section 30, township 63, range 11, in the Duluth land district, has been raging in the land department of the general government for

many years, and in the answer defendant has given the history of this contention with great minuteness. We shall not undertake to state all of the allegations, but only such portion as will serve to make our position clear and well understood.

Defendant Hyde claims to have settled on the land about August 20, 1884, and to have resided upon it ever since. He was then a qualified pre-emptor under the laws of the United States, and the land was vacant, unoccupied, unsurveyed, and subject to pre-emption. Afterwards the land was surveyed, and the plat duly filed in the local land office. July 20, 1885, defendant appeared, and applied to file a declaratory statement for and upon this particular 40 acres and three other adjoining tracts,—160 acres in all. He alleges that he was informed by the local land officers that his application would be rejected, unless limited to the 40, and that he then informed the officers that his house and other improvements were on this tract, and that he intended to claim it as his pre-emption, whether he was successful in a contest which he had instituted against the location of certain half-breed scrip upon the balance of the land covered by his declaratory statement or not. From the indorsement upon the statement itself, made by the officers, it appears that his application was rejected, as to all of the 160 except this 40, for the reason that the date of settlement therein averred did not antedate the unadjusted location of Sioux half-breed scrip No. 19 E, issued to one Moreau, filed for location June 16, 1883; said location, when filed, having, in the opinion of the officers, withdrawn the land from settlement under the pre-emption act. Defendant thereupon appealed from the decision of the local land officers to the commissioner of the general land office, under the belief, as he alleges, that his application had been entirely rejected. What has become of this appeal does not appear from the answer, except as may be inferred from subsequent allegations.

It was alleged that prior to the making of this application the defendant had filed an affidavit of contest against the location of scrip No. 19 D, and about the same time one McDonald, claiming to be a qualified pre-emptor, and to have superior rights, as such, to 160 acres in the same section, filed another affidavit of contest against the location of scrip No. 19 E on the 160 just mentioned, made by the same person (Moreau) at the same time scrip No. 19 D was located,

the grounds of the contest being the same in each case. April 6, 1886, a hearing was had for the McDonald contest, on an order of the commissioner that both cases should then be heard, and the validity of the scrip locations determined.

Meantime the locations had been adjusted so that No. 19 D covered three 40's included in defendant's declaratory statement before referred to, and No. 19 E covered the 160 claimed by McDonald; and it was further alleged that October 15, 1885, one Sharp, claiming to be the attorney in fact of James H. Warren, a mixed blood, had been permitted to locate Chippewa scrip on the 40 here in dispute, no notice thereof having been given to defendant. He first learned of this location April 10, 1886, and immediately filed an affidavit for a contest, alleging his own prior occupation, residence,, and improvements, his application to file the declaratory statement, its rejection, and his appeal. December 22, 1888, a hearing was ordered, and the order transmitted to the local land officers. What was done, if anything, in the way of a hearing on this order, does not appear; but March 8, 1889, the secretary of the interior revoked the same. Defendant then moved to set aside the order of revocation. The only allegation in reference to what action has been taken on this motion is that the commissioner of the general land office has wrongfully refused to act upon it. It is, perhaps, of no consequence, but we are of the opinion that it would·be somewhat remarkable if the commissioner should act upon a motion to set aside an order made by the secretary, his superior officer.

A copy of the order of the commissioner, whereby a contest was ordered on the location of scrip No. 19 E, is made a part of the answer. From this it appears that what is known as the "McDonald Contest" was ordered upon the charges made to the commissioner by both McDonald and the defendant. It further appears from this answer that all parties to the contest appeared and submitted evidence. It is also alleged in the answer that at this hearing certain evidence, stated in detail, was admitted and received, and that it was irrelevant, incompetent, and immaterial. We need not repeat this evidence, and will simply say that it strongly tended to show that defendant's settlement on the land was not made in good faith, for his own use and benefit, but, on the contrary, that he had entered into a contract with at least one other person by which the title he

might acquire to the land embraced in his declaratory statement would inure, should he be successful in his contest over the location of scrip No. 19 D, to the benefit of such other person, and, therefore, that he was absolutely unable to make the oath prescribed in the pre-emption act (U. S. Rev. St. § 2262). While there was some equivocation in the testimony of the witnesses on this point, we do not hesitate to say that it was sufficient to sustain a verdict of a jury that defendant had entered into such a contract, or to warrant a finding of a court, or of the officers of the land department, of the same import. Such a verdict or finding would not be disturbed by us on appeal from a trial court.

At the conclusion of the taking of the testimony, all of the parties to the other contest entered into a stipulation whereby it was agreed that the testimony theretofore taken should be considered in determining the validity of both locations of scrip Nos. 19 D and 19 E, thus stipulating into the contest over the location of scrip 19 D the testimony taken in the contest over scrip 19 E. There was testimony received at the hearing which tended to establish the allegation made by McDonald and the defendant that the scrip locations were illegal, and, while the local land officers held them valid, their decision was reversed August 4, 1888, by the commissioner of the general land office, and he ordered that the scrip location be held for cancellation, subject to the contestee's right to appeal. In alleging this decision, defendant avers that the commissioner also rejected defendant's application to file on the lands. The contestee thereupon appealed to the secretary of the interior, and he affirmed the decision February 18, 1889; but, according to the averments of the answer, the secretary also held that the lands were open to entry by the first legal applicant. The defendant subsequently obtained from the secretary an order modifying the decision in so far as it determined that the preference right of entry of either McDonald or defendant was therein decided.

There are other allegations in the answer, to the effect that no charges were ever made, or filed in the land department, affecting the right of defendant to file on the land as a pre-emptor, or his good faith as a pre-emptor, and that on these questions he has never been heard, because in none of those contests have such questions been in issue; and allegations respecting an application to contest the Warren entry,

made by one Hartman; other applications to contest such entry by other parties; and an application by one Chandler to locate scrip on this 40,—all of which were refused and rejected by the commissioner, he holding that the location of the Warren scrip was legal and valid. Appeal being taken to the secretary by all parties contesting, defendant included, the secretary decided, May 31, 1892, "that this defendant could claim nothing by virtue of his pre-emption claim" to the 40 in dispute, but ordered a hearing of the contest made by Hartman. Defendant then moved for a rehearing, making several assignments of error, and November 12, 1892, this motion was denied. When the hearing of the Hartman contest came on in the local land office, defendant applied to be made a party thereto, and his application was rejected. Again he appealed, and in August, 1893, the commissioner decided that he had no standing in the case, or right to contest the Warren entry. As might be expected, this decision was appealed to the secretary, and July 20, 1894, the commissioner's decision was affirmed, and it was ordered that the Warren entry be held for patenting. A patent based on this entry was then issued and delivered.

We have thus stated the allegations found in that part of the answer denominated the counterclaim, from which it seems certain that this controversy has occupied the attention and commanded the time of the local land officers, the commissioner of the general land office, and the secretary of the interior, quite steadily, for more than ten years. If persistency always brought reward, and was enough in itself to support a conclusion that defendant's claim to the land was well founded and meritorious, he would have been awarded it years ago.

We do not find it necessary to consider a number of the points made in the briefs, but shall rest our conclusion that the order sustaining the demurrers must be affirmed upon the proposition heretofore stated, that the testimony we have referred to as detailed in the answer was sufficient to justify a finding by the commissioner and the secretary that this defendant could not make the oath required of him as a preliminary condition to his right to enter government land under the pre-emption act,—a finding evidently made, and on which all subsequent action seems to have been predicated. We are not required to express any opinion upon the merits of the claim made by defend-

ant to this land, aside from those mentioned, and expressly decline so to do. Nor are we to determine to precisely what extent it is the province of a court of equity to inquire into the facts of a case like this notwithstanding the decisions of the land department.

As before indicated, our decision will be rested upon the proposition stated in reference to the testimony taken at the hearing in respect to the location of scrip No. 19 E, and thence stipulated into the contest over the location of scrip No. 19 D. At this hearing, testimony was taken and submitted, not only in reference to the legality of the scrip locations, but also the claims and rights of the pre-emption applicants, McDonald and defendant Hyde. This testimony was not objected to in any manner, so far as has been shown by the answer, as it should have been if the parties wished to avail themselves of a claim in those cases, or elsewhere, that such testimony was irrelevant, incompetent, or immaterial. If the contestants chose voluntarily to litigate the question as to their rights or qualifications as pre-emption claimants at those hearings, they are not now in position to say that the questions were not litigated, because not strictly within the issues ordered to be heard, and that the testimony was of no effect. If, upon the other hand, the testimony in reference to contestants' rights and qualifications was properly in that case,—and it may have been, in order to give the contestants any standing before the department,— it was properly there for every purpose, and the contestants would be bound by it. So that it is immaterial whether such testimony was introduced at the hearing by consent,—that is, whether the questions were voluntarily litigated,—or legitimately and as bearing upon a proper subject of inquiry.

It is also to be borne in mind that when these hearings were had the defendant's right to file a declaratory statement and to enter land under the pre-emption act was before the land department, upon appeal from a decision of the local land officers rejecting his filing. It is alleged that, when deciding the scrip contest, the commissioner rejected defendant's application to file a declaratory statement, and, further, that in his decision of February 18, 1889, the secretary held that the lands involved in the scrip location contests were open to entry by the first legal applicant; and it is also alleged that in May, 1892, the secretary held that the defendant could claim nothing by virtue of his pre-emption claim. The first of these decisions

was in the the matter of the contests wherein the damaging testimony was introduced, and, upon the face of the answer, must be regarded as a finding that defendant could not legally comply with the conditions of the pre-emption act. Nor was it necessary, whenever defendant asserted his claim to be entitled to pre-empt the entire 160, or any part thereof, again to take testimony, again consider it, and again determine that which had once been passed on.

It was not error to dispose of defendant's pre-emption claim, as seems to have been done, whenever asserted after the scrip-location contests, by reference to another decision, holding it invalid. This was the ruling of the secretary, November 12, 1892 (Hyde v. Warren, 15 L. D. Dep. Int. 415), to which ruling reference is made in the answer. In the land department the question was res judicata, upon the same principle as would be applied in a court of justice if there had been a verdict against defendant, followed by a judgment,—an estoppel by verdict. The competency of the defendant to comply with the requirements of the pre-emption act,—his qualification as a pre-emptor,—was a question of fact, peculiarly for the determination of the officers of the land department. It has repeatedly been held that the decision of these officers is conclusive on a question of fact, in the absence of fraud. Vance v. Burbank, 101 U. S. 514, and cases cited. But, if this had not been held, it is obvious that we should give to the evidence on which a finding is made by the department officers as much weight as we would give to evidence received upon the trial of an ordinary civil action in our own courts. We do not reverse a finding if the evidence reasonably tended to support it. And it is wholly immaterial whether the fact determined relates to the qualifications of a claimant to enter land under the pre-emption act, or to the settlement and improvements under which he claims the right to enter.

But counsel for defendant urge that the stipulation through which the testimony we have referred to was stipulated into the contest over the location of scrip No. 19 D on part of the land described by defendant in his declaratory statement was that such testimony should be considered in determining the validity of the scrip locations, and nothing more. But, as before stated, it appears that these contests were initiated and prosecuted by McDonald and defendant jointly, and the testimony was, in this case, actually taken

without objection, either as bearing upon an issue which the parties last named had volunteered to litigate, or as properly being within the issues,—always tried without pleadings in land contests, and in proceedings much more informal than in a court of justice,—and thus competent and material in all respects.    If the defendant desired to exclude this particular testimony from consideration, he should have so stipulated, and evidently he did not do so.    The evidence was in both cases without objection or reservation.    No restrictions were placed upon it, and there was nothing to indicate that it was not to be considered and passed upon.    He thus waived the irregularity, if there was any.    The testimony was before the land officers for all legitimate purposes.    They determined the question of fact presented, and there is no reason why we should disturb the finding.

The order sustaining the demurrers must be affirmed.    It therefore seems unnecessary for us to discuss the merits of the question presented by the other appeal, and the order appealed from must also be affirmed.    It is so ordered.