VANCE v. BURBANK.

1. The decision of the officers of the Land Department is final upon the question
   whether a claimant under the Donation Act (9 Stat. 496), when he demanded
   his patent certificate as against other contesting claimants, had resided on
   and cultivated the lands in dispute for four consecutive years, and had
   otherwise conformed to the requirements of the act.
2. To obtain relief upon the ground of fraud, it must appear that a party was
   prevented thereby from exhibiting his case fully to the department, so that
   it may properly be said there never was a decision in a real contest about
   the subject-matter of inquiry.   An allegation in a bill in equity that false
   testimony was submitted is not sufficient, where the party had opportunity
   to meet it and took all the appeals which the law gave.
3. A wife, or her heirs, gets nothing under that act before her husband or some
   one for him proves up the claim.

APPEAL from the Circuit Court of the United States for the
District of Oregon.

This is a suit in equity commenced on the 24th of December,
1877.   The case made by the bill is as follows : —

On the 20th of July, 1848, Lemuel Scott, a married man,
settled on six hundred and forty acres of land in Oregon, and
became a claimant thereof under the laws of the provisional
government.   On the 27th of September, 1850, Congress passed
the " Donation Act " (9 Stat. 496), the provisions of which are
fully stated in *Hall* v. *Russell, supra*, p. 503.   At the date of
this act the wife of Scott lived with him on the land, and he

had all the qualifications of a "settler." The lands were not then surveyed. Mrs. Scott died April 9, 1851, leaving three children, Louisa, aged five years, Caroline, aged three years, and Almeda, aged one year. Louisa and Almeda are plaintiffs in this suit.

On the 8th of October, 1852, one Joel Perkins notified the surveyor-general of the Territory of his claim as a settler under the Donation Act to a certain tract of land. A description of this claim was duly entered in the proper book. The next day, October 9, Scott notified the surveyor-general of his claim as a married man, which was also duly entered. The same day he presented the surveyor-general with his proof of four years' residence, cultivation, &c., as required by sect. 7, and demanded a certificate of proof of compliance with the law and a designation of the part of the land inuring to himself, " and that part inuring to the said Mary Jane Scott, his wife." The claims of Scott and Perkins conflicted, and because of this the surveyor-general declined to issue a certificate to Scott.

On the 23d of August, 1853, Scott and Perkins, in order to settle and adjust the conflict of claims between them, entered into an agreement, whereby Scott was to relinquish to Perkins all the land lying south and west of a certain line pointed out by the parties at the time on the premises, and Perkins relinquished to Scott all east and north of the same line. The parties, on the same day, undertook to reduce this agreement to writing, and Perkins, representing " that he knew and had correct information as to the courses, bearings, and distances by which to describe and locate said agreed line, by referring to and connecting it with the public surveys," gave a description intended for that purpose, which was adopted.

Scott had no knowledge " of the courses, bearings, and distances to connect the agreed lines with the public surveys," and relied wholly on the correctness of Perkins's representations. It is alleged that in point of fact the description as given by Perkins was false and made to deceive, and that the line as put into the written instrument was not the same which had been pointed out on the land when the settlement was agreed to, but gave Perkins about ninety acres more than he should have had. This ninety-acre tract is the property now in dispute.

The agreement, reduced to writing under these circumstances, was signed in duplicate by both parties. Shortly after this was done, it was, as it is alleged, orally agreed between Scott and Perkins that Scott should send his copy to the surveyor-general, and if he would allow Scott to change his notification so as to make his boundaries conform to the agreement, the copy should be filed, but if he would not, the compromise was to be abandoned. On the 27th of August, 1853, Scott sent his copy to the surveyor-general, who refused to allow the change in the notification to be made. When this was done, Scott did not know of the alleged mistake in the description of the line. Afterwards, Perkins sent his copy of the agreement to the surveyor-general's office and had it filed. In the mean time, the surveyor-general, to whom Scott presented his copy, had gone out of office and a new incumbent was in his place.

On the 8th of May, 1854, Perkins, as is alleged, by means of false affidavits and the agreement thus fraudulently obtained from Scott, proved his compliance with the law under a settlement commenced June 30, 1849, and obtained a patent certificate for his claim, including the premises in controversy. Shortly afterwards, he left Oregon, and never returned. On the 2d of March, 1855, Scott, as soon as he heard of what had been done, filed his protest against the allowance of the claim of Perkins, on the ground that the affidavits produced were false. He also petitioned the register and receiver to re-examine the case, " to the end that the claim and rights of said Lemuel Scott and of the heirs of his deceased wife might be secured and protected." This application was refused.

In May, 1850, Perkins executed a deed to the board of county commissioners of the county of Yamhill, purporting to convey all his claim to a part of the disputed premises. Afterwards, the Probate Court of the county, acting as a board of county commissioners, claiming the right to enter the lands under the provisions of the town-site law of 1844 (5 Stat. 657), caused a plat and survey to be made for that purpose. On the 19th of April, 1858, the county commissioners of the county, having first obtained the permission of the Commissioner of the General Land-Office therefor, entered the land so surveyed as a town site, and the town of La Fayette is located thereon. This

plat and town embrace the land described in the deed from Perkins to the county.

On account of the conflict of boundaries between the town-site tract, the Perkins claim, and the Scott claim, Scott and the heirs of Perkins, he having died, were notified to make their contests for their respective tracts when the proceeding for the entry of the town site were pending. The children of Mrs. Scott were not notified. Pursuant to this notice, however, Scott and the heirs of Perkins did appear, and depositions were taken, but as soon as all the depositions in behalf of the town-site entry were in, and before Scott was ready with his witnesses, the case was heard and decided adversely to his claim. He then petitioned for a rehearing, which was granted on the order of the Commissioner of the General Land-Office.

In November, 1859, a deputy surveyor was appointed by the surveyor-general to make a survey of the Scott claim. This survey was made and the plat filed. Thereupon Scott demanded a patent certificate in accordance with the plat, and a designation of the part which was to be for his own benefit and that which was to be for the benefit of his wife and her heirs.

Further testimony was then taken on the rehearing which was granted by the commissioner, and on the 1st of February, 1862, the register and receiver decided against the Scott claim, and in favor of the town-site and the Perkins claim. It is alleged that on this rehearing, " in addition to the false and fraudulent evidence hereinbefore referred to, further false and fraudulent evidence of residence upon and cultivation of said Joel Perkins was produced by the heirs and representatives of said Joel Perkins, for the purpose of deceiving the officers of the land office of the United States and defrauding the said Lemuel Scott and Caroline Scott and your orators."

From this decision of the register and receiver Scott appealed to the Commissioner of the General Land-Office, and employed an attorney in Washington to look after the case. The attorney soon afterwards left Washington without notifying Scott. The appeal was heard in March, 1866, and the decision of the register and receiver affirmed. It is alleged " that in transmitting said appeal to the Commissioner of the General Land-Office, the register and receiver, from whose decision the appeal was taken,

failed and omitted to transmit therewith all the evidence which had been offered, introduced, and used on the hearing before them, and that a large number of original depositions, exhibits, and documents introduced and used in evidence before the register and receiver were not transmitted. That among the said depositions, exhibits, and documents which were not transmitted to the said commissioner, were some which had been taken, introduced, and used on behalf of said Lemuel Scott on the hearing of said contest before the register and receiver, and which strongly supported the claim of said Lemuel Scott in said contest, and that, as your orators are informed and believe, the said Lemuel Scott was wholly ignorant of the omission to transmit said depositions, exhibits, and documents, and fully supposed until within one year last past, that all the depositions and evidence used in the contest before the register and receiver had been transmitted along with the appeal." The case was heard and decided by the commissioner upon the evidence sent up and no other. Scott was not represented at the hearing by an attorney. From the decision of the commissioner Scott appealed to the Secretary of the Interior, and employed new attorneys. This appeal was heard Sept. 9, 1868, on the evidence sent up, and decided in favor of the Perkins claim. On the rendition of this decision a patent certificate was issued in due form to the heirs of Perkins, for that part of the premises not included in the town-site entry. A patent was made out ready for delivery March 14, 1872, but at the time of the commencement of this suit it had not been called for. A patent was issued and delivered to Yamhill County on the town-site entry some time in 1866.

Caroline Scott died Aug. 28, 1864, leaving her father her sole heir-at-law. Louisa was married to James Vance in 1866, and Almeda was married to Livy Swan during the same year. On the 15th of October, 1877, Lemuel Scott conveyed to his two surviving daughters all his interest in the property.

Some of the defendants claim title under the town-site entry, and some under the Perkins patent.

The prayer of the bill is in substance that the Perkins patent and the town-site entry may be declared invalid as against the complainants, and that the defendants may be required to con-

vey to the complainants such title as they respectively hold under the patent or entry.

The defendants demurred to the bill. This demurrer was sustained and the bill dismissed. From that decree this appeal has been taken.

*Mr. W. Lair Hill* for the appellants.

*Mr. J. N. Dolph, contra.*

MR. CHIEF JUSTICE WAITE, after stating the case, delivered the opinion of the court.

So far as this suit depends on the original title of Lemuel Scott, it is clear, under the well-settled rules of decision in this court, that there can be no recovery. The question in dispute is one of fact; that is to say, whether Scott, when he demanded his patent certificate as against the other contesting claimants, had resided on and cultivated the lands in dispute for four consecutive years, and had otherwise conformed to the requirements of the donation act. This was to be determined by the Land Department, and as there was a contest, the contending parties were called on in the usual way to make their proofs. They appeared, and full opportunity was given Scott to be heard. He presented his evidence and was beaten, after having taken the case through by successive stages on appeal to the Secretary of the Interior. This, in the absence of fraud, is conclusive on all questions of fact. We have many times so decided. *Johnson* v. *Towsley*, 13 Wall. 72; *Warren* v. *Van Brunt*, 19 id. 646; *Shepley et al.* v. *Cowan et al.*, 91 U. S. 330; *Moore* v. *Robbins*, 96 id. 530; *Marquez* v. *Frisbie, supra*, p. 473. The appropriate officers of the Land Department have been constituted a special tribunal to decide such questions, and their decisions are final to the same extent that those of other judicial or quasi-judicial tribunals are.

It has also been settled that the fraud in respect to which relief will be granted in this class of cases must be such as has been practiced on the unsuccessful party, and prevented him from exhibiting his case fully to the department, so that it may properly be said there has never been a decision in a real contest about the subject-matter of inquiry. False testimony or forged documents even are not enough, if the disputed matter

has actually been presented to or considered by the appropriate tribunal. *United States* v. *Throckmorton*, 98 U. S. 61; *Marquez* v. *Frisbie, supra*. The decision of the proper officers of the department is in the nature of a judicial determination of the matter in dispute.

The operative allegation in this bill is of false testimony only. That testimony Scott had full opportunity of meeting. Rehearings were granted him when the case seemed to require it, and he took all the appeals the law gave. The last decision was given by the highest department officer. If the evidence he presented to the register and receiver was not all considered on these appeals, it was clearly his own fault. It was more than six years from the time his first appeal was taken before the final hearing was had. No fraud is charged on the register and receiver, or on the heirs of Perkins in respect to the keeping back of the evidence. If any was in fact not sent forward, and Scott did not discover the omission until within one year of the time of the commencement of this suit, he must have been grossly neglectful of his own interests. He does not now state what the omitted evidence was, or that it was anything more than cumulative. The extent of his averment is that it strongly supported his claim in the contest. For all we know, the other evidence might have been equally strong, and might have covered the whole ground.

As to the alleged fraud in the description of the compromise line, it is sufficient to say that, according to the bill, this fraud, if it in fact existed, was discovered long before the contest in the Land Department, and if it had any importance in the case the amplest opportunity was given to show the error and get relief against the agreement. This was one of the matters that might have been presented to the Land Department, and, therefore, is concluded by the decision of that tribunal. Under these circumstances it would be gross injustice to attempt to open that inquiry at this late day in favor of Scott himself, or any one claiming under him upon his own title, irrespective of any his wife may have had.

This brings us to inquire as to the rights of the children and heirs of the deceased wife. In *Hall* v. *Russell* (*supra*, p. 503) we held that a grant to a settler did not take effect as against

the United States, so as to pass any thing more than a possessory right in the lands occupied, until the completion of the four years' residence and cultivation, and a full compliance with all the other conditions of the act.    The statutory grant was to the settler; but if he was married the donation, when perfected, inured to the benefit of himself and his wife in equal parts. The wife could not be a settler.    She got nothing except through her husband.    If he abandoned the possession before he became entitled to the grant, her estate in the land was gone as well as his.    In the view we take of the case, it is unnecessary to decide when a settlement became perfected so as to establish a claim, or whether, if the wife died before the end of the four years, her heirs would be entitled to her half when the grant was completed.    The question here is whether the wife, or her heirs, gets any thing before the husband, or some one for him, proves up the claim.

The "settler" is made by the statute the actor in securing the grant.    He must notify the surveyor-general of his claim. He must occupy and cultivate the land, and otherwise conform to the provisions of the act, and he, or some one for him, must also make the final proof.    When this is done, and he becomes entitled to the grant, his wife takes her share in her own right, but up to that time he alone makes the claim.    His acts affecting the claim are her acts.    His abandonment, her abandonment. His neglect, her neglect.    As her heirs must claim through her, whatever would bar her will necessarily bar them.    The Land Department, until the final proofs are made, knows only the husband.    If contests arise, he is the party to be notified.    He represents the claim, and whatever binds him binds all interested through him in the questions to be decided.    For this reason, whatever might have been the rights of the children of Mrs. Scott if the claim had been successfully "proved up," their father was their representative in making the proof, and they must abide the consequences of what he did or omitted to do in their behalf.    It follows that, notwithstanding the infancy of the children, the decision of the Land Department concludes them as well as their father.

This disposes of the case, and the decree is

*Affirmed.*