McLEOD v. UNITED STATES (three cases).

(Circuit Court of Appeals, Ninth Circuit. April 3, 1911.)

Nos. 1,846, 1,847, 1,848.

PUBLIC LANDS (§ 138*)—OBTENTION BY FRAUD—PURCHASERS FOR VALUE—RIGHTS.

Title acquired from persons who fraudulently procured title under fictitious homestead proceedings in the names of fictitious persons is subject to divestiture on suit by the United States, though the purchaser be a bona fide purchaser.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 368; Dec. Dig. § 138.*]

Appeals from the United States Circuit Court for the District of Oregon.

Bills by the United States of America against G. B. McLeod to cancel certain land patents. From decrees of the United States Circuit Court for the District of Oregon (174 Fed. 508) for plaintiff, defendant appeals. Affirmed.

The bills in these three cases were brought in the Circuit Court of the United States for the District of Oregon in the name of the acting Attorney General of the United States against the defendant to cancel certain patents issued by the United States upon alleged homestead applications and purporting to convey title to certain described public lands of the United States situated in Lane county, Or., on the ground that the said homestead applications were false and forged, and made in the names of fictitious persons; that the patents were issued by the President of the United States to and in the names of such fictitious persons erroneously and under a mistake of fact, and without knowledge that such applications had been fraudulently made in the name of fictitious persons.

It appears from the evidence, and it is not denied, that the homestead applications were fraudulently made in the names of James E. Warwick, William H. Watkins, and Samuel L. Carson upon false proof of settlement and cultivation under the homestead laws of the United States; that there were no such persons as James E. Warwick, William H. Watkins, and Samuel L. Carson; that there was no settlement, residence upon, or cultivation of any of the lands described in the patents by any person; that the homestead applications and other papers upon which the patents were issued were all fraudulently prepared by Marie L. Ware, the United States commissioner residing at Eugene, Or.; that they were so prepared at the request and upon the suggestion and with the assistance of S. A. D. Puter, Horace G. McKinley, and others, parties to a conspiracy to defraud the United States out of the title to such lands; that the manner of carrying out this conspiracy was as follows: The names of Warwick and Watkins were signed to applications, af-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

fidavits of pretended settlers, and final proof papers in blank by Puter, and the name Carson signed to similar papers by Lawrence Hickey, Puter's brother-in-law. These homestead applications. affidavits of pretended settlers, and other necessary papers were thereafter filled out by Marie L. Ware, United States commissioner at Eugene, and, after attaching her jurat thereto, she forwarded the same to the land office at Roseburg, Or., together with the notice of intention to make final proof before her, giving the names of fictitious persons who would make proof of residence on the land, and its cultivation, as required by law. These papers were accompanied by the necessary fees which were furnished by Puter and his associates, and, the papers being regular and fair upon their face, the register of the land office at Roseburg thereupon directed that notice of intention on the part of the fictitious settlers to make final proof be made as required by law, and at the time specified therein the final proof papers were filled out by Marie L. Ware and by the other parties to the conspiracy in the names of the fictitious applicants and witnesses, and, after being certified by her, were forwarded to the land office at Roseburg, and by the register and receiver certified to the Land Department at Washington. where patents were issued after due time in the names of the fictitious applicants and settlers. At the time the fraudulent homestead papers were signed the fictitious names of Warwick and Watkins were signed by Puter in deeds in blank, and the fictitious name of Carson was signed to a similar instrument by Hickey. After the final certificates had been issued by the land office, these deeds were filled out with a description of the land and the name of Emma L. Watson, also a party to the conspiracy, inserted as grantee. The deeds all purported to have been executed before Puter as a notary public. The land was subsequently conveyed by Watson by deed to P. F. Woodward, who, in turn, conveyed it to the defendant G. B. McLeod, who, it is conceded, was a purchaser in good faith for value, and without notice of the fraud.

The Circuit Court entered a decree adjudging that the patents issued by the United States to the patentees were null and void, and ordered that the same be vacated, set aside, and canceled, and that all deeds and conveyances purporting to convey said lands to the defendant and his grantors be declared null and void and of no effect and canceled, and that the United States be declared to be the owner in fee simple of said lands, free from the claims of all persons whomsoever. The defendant appeals.

C. W. Fulton and G. C. Fulton, for appellant.

John McCourt, U. S. Atty.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). It is contended on behalf of the appellant that the titles to the land involved in these cases were conveyed by the patents and became vested in the appellant, who was a purchaser for value without notice of any fraud, and that such titles in him cannot be divested in these actions. In support of this contention, the appellant relies upon the decision of the Supreme Court in the case of Colorado Coal & Iron Co. v. United States, 123 U. S. 307, 8 Sup. Ct. 131, 31 L. Ed. 182. The bill of complaint in that case charged that the pre-emptors and patentees were fictitious persons, having no existence in fact, and that the pre-emption papers, together with the signatures thereto, were fraudulently manufactured by the conspirators named for the purpose of cheating and defrauding the United States of its title to the lands in question. The defendant set up as a defense that it was a purchaser of the lands in good faith for a valuable consideration, without any knowledge or notice of any or either of the fraudulent acts and conspiracies in the bill. It had been held by the Circuit Court that the charge in the bill that

the supposed pre-emptors and patentees were fictitious persons, having no existence, was sufficiently proved, and that consequently, there being no grantees, no legal title passed from the United States, and that, as the defendants acquired no legal title by virtue of the supposed conveyances to them, they could not claim protection as bona fide purchasers for value without notice of the fraud. The Supreme Court, after stating that "it is, indeed, an elementary doctrine of equity that, where a grantor has been induced by fraud to part with the legal title to his property, he cannot reclaim it from subsequent innocent purchasers for value," approached the question to be determined in the case with this statement:

"Hence it becomes necessary, to support the decree of the Circuit Court, to maintain as that court declared, that the legal title to the lands in question did not pass from the United States by virtue of the patents, because there were in fact no grantees."

In other words, did it sufficiently appear from the evidence that the grantees were in fact the names of fictitious persons? The Circuit Court held that it did. Was it right in so holding? This was the question presented to the Supreme Court. For the purpose of determining this question, the court proceeded to consider the preliminary question as to the "character and degree of proof necessary in such cases to invalidate titles held by purchasers in good faith for value, and without notice, under patents issued by the United States."

The court found the answer to this preliminary question in the Maxwell Land-Grant Case, 121 U. S. 325, 379, 381, 7 Sup. Ct. 1015, 1029, 30 L. Ed. 949, where the court had said among other things:

"We take the general doctrine to be that, when in a court of equity it is proposed to set aside, to annul, or to correct a written instrument for fraud or mistake in the execution of the instrument itself, the testimony on which this is done must be clear, unequivocal, and convincing, and that it cannot be done upon a bare preponderance of evidence which leaves the issue in doubt."

With this rule before it, the court reviewed the evidence in the case tending to show the fact that the names of the grantees were fictitious, and found that it was not clear, unequivocal, and convincing upon that issue. On the contrary, the court found that:

"There is no proof of any actual fabrication of the papers, the genuineness of which is not negatived by any internal evidence. The allegations in the bill that they were in fact manufactured by the register and receiver and Hunt or by any one with their connivance are entirely unsupported by direct evidence."

Manifestly, if this case has any bearing upon the question before this court, it is against the position taken by the appellant, for, had the evidence in the case before the Supreme Court been clear, unequivocal, and convincing to the effect that the grantees named in the patents did not in fact exist, but were fictitious persons, the court would have held with the Circuit Court that the legal title to the lands in question did not pass from the United States by virtue of the patents, because there were in fact no grantees. In the present cases there are no such issues. The grantees named in the patents were the names of fictitious persons used for the express purpose of carrying into effect a

conspiracy to defraud the United States of the title to its public lands. Upon this established fact, the conclusion follows that the title to the lands did not pass from the United States because there were in fact no grantees.

The appellant also cites the case of the United States v. Sierra Nevada Wood & Lumber Co. (C. C.) 79 Fed. 691. In that case the patent was issued by the United States in the name of Charles Musso, a half-breed Indian, but a real person. There was no fraud upon the United States in any of the proceedings in the Patent Office prior to the delivery of the patent, but the patent was delivered by an officer of the government by mistake to the wrong person who obtained it by forgery and by impersonating the grantee. The person who fraudulently obtained the patent conveyed the land to an innocent purchaser for value, and the court held that the title of the innocent purchaser could not be defeated by an action to cancel the patent. This case is cited for the evident purpose of supporting the contention that if there is a real person seeking to obtain the title in a fraudulent manner, and in carrying out his scheme he personates another to whom the conveyance is made, the fraud will not defeat the title in the hands of a subsequent innocent purchaser for value and without notice of the fraud. But this doctrine does not aid the appellant, since the real persons seeking to obtain title to the land in a fraudulent manner in these cases before the court were not personating real persons, who would be entitled to the land, as was the fact in United States v. Sierra Nevada Wood & Lumber Co. They carried out their scheme of fraud, not by personating real persons, but by using fictitious names; and, the patents being issued in such fictitious names, no titles passed for the reason that there were no real persons named in whom the titles could be vested. The titles therefore remained in the United States, and the fictitious names took nothing.

We agree with the court below that the present cases clearly come within the principles announced in the case of Moffat v. United States, 112 U. S. 24, 5 Sup. Ct. 10, 28 L. Ed. 623. That was a case in which the register and receiver of public moneys of the land office at Pueblo, Colo., forged a complete record of two pre-emption entries, together with proofs of settlement and improvements thereon, one in the name of Philip Quinlan, and the other in the name of Eli Turner, both fictitious persons. The proofs purported to have been made by two witnesses who were also fictitious and mythical persons. The register and receiver also presented a quantity of college scrip, issued by the state of Florida in the name of the fictitious person, Philip Quinlan. In that case the title to the land appears to have become vested in innocent purchasers, and the court in affirming the decree of the lower court in confirming the patents used the following language:

"The patents being issued to fictitious parties could not transfer the title, and no one could derive any right under a conveyance in the name of the supposed patentees. A patent to a fictitious person is in legal effect no more than a declaration that the government thereby conveys the property to no one. There is, in such case, no room for the application of the doctrine that a subsequent bona fide purchaser is protected. A subsequent purchaser

is bound to know whether there was, in fact, a patentee, a person once in being, and not a mere myth, and he will always be presumed to take his conveyance upon the knowledge of the truth in this respect. To the application of this doctrine of a bona fide purchaser there must be a genuine instrument having a legal existence, as well as one appearing on its face to pass the title. It cannot arise on a forged instrument or one executed to fictitious parties, that is, to no parties at all, however much deceived thereby the purchaser may be."

It follows that the decrees in these cases must be affirmed, and it is so ordered.

