IOWA LAND & TRUST CO. et al. v. UNITED STATES et al.

UNITED STATES v. HAWKINS et al.

(Circuit Court of Appeals, Eighth Circuit.   July 29, 1914.)

Nos. 4001, 4077.

1. INDIANS (§ 13*)—LANDS—VALIDITY OF PATENTS—FRAUDULENT ENROLLMENT OF DECEASED PERSON.

The father of a child which had died in 1898, by false and perjured testimony that the child was a living freedman member of the Creek Tribe of Indians on April 1, 1899, procured his enrollment as such by the Commission under Act June 28, 1898, c. 517, 30 Stat. 495, Act March 1, 1901, c. 676, 31 Stat. 861, and the Supplemental Agreement with the Creek Nation of June 30, 1902, c. 1323, 32 Stat. 500, and the subsequent issuance in his name of patents to an allotment of land under said acts, which land the parents, as his heirs, sold and conveyed. *Held* that, there being no such person in existence on April 1, 1899, his enrollment and the patents issued to him were wholly void and conveyed no title, and no subsequent grantee could acquire any title or rights thereunder.

[Ed. Note.—For other cases, see Indians, Cent. Dig. § 30;  Dec. Dig. § 13.*]

2. VENDOR AND PURCHASE (§ 220*)—BONA FIDE PURCHASERS—LIMITATION OF DOCTRINE.

The equitable doctrine of bona fide purchaser without notice does not apply, where there is a total absence of title in the vendor.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 461-465, 720;  Dec. Dig. § 220.*]

3. INDIANS (§ 18*)—LANDS—VALIDITY OF PATENT.

Act April 26, 1906, c. 1876, § 5, 34 Stat. 138, and Act June 25, 1910, c. 431, § 32, 36 Stat. 863, which provide for the contingency of the death of an Indian allottee before the deed becomes effective, and that in such case the land shall inure to and vest in his heirs, both assume the existence of a legal allottee, and neither has any application where there never was such an allottee in existence.

[Ed. Note.—For other cases, see Indians, Cent. Dig. § 49;  Dec. Dig. § 18.*]

4. INDIANS (§ 13*)—PATENTS TO ALLOTMENT—SUIT FOR CANCELLATION—FINDING OF COMMISSION.

A finding by the Commission to the Five Civilized Tribes of Indians that a person was entitled to enrollment as a member of a tribe and to an allotment of land, in proceedings wholly ex parte, is not conclusive against the United States, when it sues to cancel the resulting patent on the ground that it was obtained by means of false and fraudulent proofs.

[Ed. Note.—For other cases, see Indians, Cent. Dig. § 30;  Dec. Dig. § 13.*]

Appeal from the District Court of the United States for the Eastern District of Oklahoma;  Ralph E. Campbell, Judge.

Suit in equity by the United States against James Hawkins, Ella Hawkins, the Boynton Land, Mining & Investment Company, the Iowa Land & Trust Company, E. S. Warner, L. C. Hivick, M. I. Seifried, W. H. Manes, and J. P. Hivick.   From the decree there were cross-appeals by the United States and by the Iowa Land & Trust Company and E. S. Warner.   Reversed on appeal of United States. Affirmed on appeal of other parties.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In No. 4001:

Charles F. Runyan, of Muskogee, Okl., for appellants.

C. C. Herndon, Asst. U. S. Atty., of Muskogee, Okl. (John B. Meserve and D. H. Linebaugh, both of Muskogee, Okl., on the brief), for the United States.

In No. 4077:

C. C. Herndon, Asst. U. S. Atty., of Muskogee, Okl. (D. H. Linebaugh, of Muskogee, Okl., on the brief), for the United States.

N. A. Gibson, of Muskogee, Okl., for appellees Hivick and others.

Before HOOK and CARLAND, Circuit Judges, and REED, District Judge.

CARLAND, Circuit Judge. [1] Chester Hawkins was born January 1, 1897, and died May 27, 1898. He was the son of James and Ella Hawkins. On or about the 19th day of January, 1904, James Hawkins appeared before the Commission to the Five Civilized Tribes and filed therewith proof tending to show that the said Chester Hawkins was a freedman member of the Creek Nation or Tribe of Indians, and was in fact living and entitled to enrollment on the 1st day of April, 1899, as provided in the act of June 28, 1898 (30 Stat. 495), and the act of March 1, 1901 (31 Stat. 861), and the Supplemental Agreement of the Creek Nation of June 30, 1902 (32 Stat. 500). The Commission, accepting as true the proof offered by said James Hawkins, admitted to enrollment said Chester Hawkins as a freedman citizen of the Creek Nation, entitled to an allotment of land under the several acts of Congress above referred to. On or about June 6, 1904, said James Hawkins made application to the Commission to have allotted to Chester Hawkins the northwest quarter of section 14, township 12 north, range 13 east. On the same day certificates of allotment were issued to the said Chester Hawkins and delivered to James Hawkins, allotting forty (40) acres of said land as a homestead and 120 acres as surplus land. On August 20, 1904, a homestead deed or patent was issued to Chester Hawkins by P. Porter, Principal Chief of the Muskogee (Creek) Nation, conveying to said Chester Hawkins the southeast quarter of the northwest quarter of section 14, township 12 north, range 13 east. On the 30th day of August, 1904, an allotment deed was issued by the Muskogee or Creek Nation, signed by P. Porter, Principal Chief, as aforesaid, conveying to Chester Hawkins the west half of the northwest quarter and the northeast quarter of the northwest quarter, section 14, township 12 north, range 13, which deeds were approved by the honorable Secretary of the Interior October 26, 1904, and were filed for record November 4, 1904. James Hawkins and Ella Hawkins conveyed the land in question to the Iowa Land & Trust Company for the consideration of $300. On the 17th day of March, 1909, James Hawkins and Ella Hawkins conveyed the same property for the consideration of $1 to E. S. Warner, who was the president of the Iowa Land & Trust Company. June 3, 1910, the Iowa Land & Trust Company executed and delivered an oil and gas lease on said land to L. C. Hivick and M. I. Seifried.

The evidence submitted by James Hawkins, upon which Chester Hawkins was admitted to enrollment by the Commission to the Five Civilized Tribes, was false and perjured; Chester Hawkins having died as hereinbefore stated. The United States brought this action in the court below in its own behalf and in behalf of the Creek Tribe or Nation of Indians, for the purpose of having the patents issued to Chester Hawkins declared void and canceled. The trial court granted the relief prayed for except as to the lessees of the Iowa Land & Trust Company, holding that the patents were void as against the other defendants, and that the Iowa Land & Trust Company had actual notice that Chester Hawkins was not living on April 1, 1899. It decided that the lessees of the Iowa Land & Trust Company were innocent purchasers, so to speak. The United States has appealed from so much of the decree as was in favor of the lessees of the Iowa Land & Trust Company—No. 4077. The Iowa Land & Trust Company and E. S. Warner have appealed from the decree against them—No. 4001. All other defendants either filed a disclaimer or defaulted.

As we view the case, we do not think that it is one where the defense of innocent purchaser may be applied. Chester Hawkins, having died before April 1, 1899, must be considered as having had no existence, so far as being a citizen of the Creek Nation entitled to an allotment of land under any law of Congress. The patents issued by the Creek Nation ran to a person not in being, and therefore conveyed no title whatever. There being no ancestor entitled to an allotment of land, there was no land to which the heirs of Chester Hawkins were entitled. As we understand the Creek Agreement, in cases where the ancestor dies before allotment, but after enrollment, the lands were to be conveyed directly to the heirs; therefore there was no pretense in this case that the heirs were seeking an allotment as representatives of a deceased ancestor. There can be no question but that the patents were void. The only question is as to whether a case is presented where under any circumstance an innocent purchaser of the land can be protected. If no title passed from the Creek Nation, then the vendees of James and Ella Hawkins obtained no title, nor did the lessees of the Iowa Land & Trust Company.

[2] We do not see how there can be any escape from this conclusion. The equitable doctrine of a bona fide purchaser without notice does not apply where there is a total absence of title in the vendor. The good faith of a purchaser cannot create a title where none exists. Tiffany's Real Property, § 380 (Ed. 1903); Jones' Law of Real Property, § 223; Hunter v. Watson, 12 Cal. 363, 73 Am. Dec. 543. See, also, Boone v. Chiles, 10 Pet. 177, 9 L. Ed. 388; Vattier v. Hine, 7 Pet. 252, 8 L. Ed. 675; Sampeyreac v. United States, 7 Pet. 222, 8 L. Ed. 665; Lindblom v. Rocks, 146 Fed. 660, 77 C. C. A. 86; Texas Lumber Mfg. Co. v. Branch, 60 Fed. 201, 8 C. C. A. 562; Dodge v. Briggs (C. C.) 27 Fed. 160; Oakley v. Ballard, Fed. Cas. No. 10,393.

We are of the opinion that, as Chester Hawkins never had any existence so far as being entitled to an allotment of land is concerned, and having died before April 1, 1899, he was, so far as being an applicant for a patent to the land in controversy, a myth, and that the

language used by the Supreme Court in Moffatt v. United States, 112 U. S. 31, 5 Sup. Ct. 14, 28 L. Ed. 623, is pertinent. We quote from the opinion in the case as follows:

"The patents, being issued to fictitious parties, could not transfer the title, and no one could derive any right under a conveyance in the name of the supposed patentees. A patent to a fictitious person is, in legal effect, no more than a declaration that the government thereby conveys the property to no one. There is, in such case, no room for the application of the doctrine that a subsequent bona fide purchaser is protected. A subsequent purchaser is bound to know whether there was, in fact, a patentee, a person once in being, and not a mere myth, and he will always be presumed to take his conveyance upon the knowledge of the truth in this respect. To the application of this doctrine of a bona fide purchaser there must be a genuine instrument having a legal existence, as well as one appearing on its face to pass the title. It cannot arise on a forged instrument, or one executed to fictitious parties; that is, to no parties at all, however much deceived thereby the purchaser may be. Even in the case of negotiable instruments, where the doctrine is carried farthest for the protection of subsequent parties acquiring title to the paper, it cannot be invoked if the instrument be not genuine, or if it be executed without authority from its supposed maker. Floyd's Acceptances, 7 Wall. 666, 676 [19 L. Ed. 169]; March v. Fulton County, 10 Wall. 676, 683 [19 L. Ed. 1040]."

We think the present case comes clearly within the principles above announced. McLeod v. United States, 187 Fed. 261, 109 C. C. A. 207, and McClure v. United States, 187 Fed. 265, 111 C. C. A. 1, are cases where the Court of Appeals of the Ninth Circuit held for cancellation patents to land even where the land had been conveyed to bona fide purchasers.

It is claimed, however, that this court in the case of United States v. Jacobs, 195 Fed. 707, 115 C. C. A. 507, decided that the bona fide purchaser had a right to rely upon the finding of the Commission to the Five Civilized Tribes, that Pearlie Jacobs in that case was a living member of the tribe on April 1, 1899. We think the present case is clearly distinguishable from United States v. Jacobs, supra, in this respect: It appears from the opinion in that case that Pearlie Jacobs was a freedman member of the Creek Nation or Tribe of Indians and had been enrolled, but that she died before an allotment was made to her, and that under the law the heirs applied for the allotment and patents were issued to them. So far as a bona fide purchaser is concerned, the fact that the heirs of Pearlie Jacobs made an application for an allotment as representatives of a deceased ancestor, and that patents issued to them direct, presents a very different case from the one at bar. In the case cited the title to the land undoubtedly passed. The grantees were in being as held by this court. The bona fide purchaser dealing with the heirs, who had the apparent title on the face of the patent, would have a right to rely upon the judgment or finding of the Commission to the Five Civilized Tribes that the patentees were entitled to the land. In the case at bar there was no instrument which conveyed in any way the title to the land in question from the Cherokee Nation to James and Ella Hawkins. We therefore think that this is a case where the patents must be held to be void, even as against an innocent purchaser, if any such exists.

[3] It is claimed that section 5 of the Act of Congress of April

26, 1906 (34 Stat. 137), and section 32 of the Act of Congress of June 25, 1910 (36 Stat. 855), relieve the case of the difficulties which have been mentioned. These laws have no application where there is no allottee. The language used in section 5 assumes that there is in existence a legal allottee, and provides for the contingency of the death of the allottee before the patent becomes effective. This law provides that, if the death of the allottee occurs before the patent becomes effective, the land shall inure to and vest in his heirs. Section 32 is to the same effect. It assumes that deeds have been issued to a legal allottee, who has died before the approval of the deed. Neither section deals with the case where there never was an allottee in existence.

[4] It is urged, also, in the present case, that the United States cannot cancel the patents in question because the fraud alleged was not extrinsic to the matter tried at the hearing before the Commission. To support this position the following cases are cited: Hilton v. Guyot, 159 U. S. 113, 16 Sup. Ct. 139, 40 L. Ed. 95; United States v. Throckmorton, 98 U. S. 61, 65, 66, 25 L. Ed. 93; Vance v. Burbank, 101 U. S. 514, 519, 25 L. Ed. 929; Steel v. St. Louis Smelt. & Ref. Co., 106 U. S. 447, 453, 1 Sup. Ct. 389, 27 L. Ed. 226; Moffat v. United States, 112 U. S. 24, 32, 5 Sup. Ct. 10, 28 L. Ed. 623; United States v. Minor, 114 U. S. 233, 242, 5 Sup. Ct. 826, 29 L. Ed. 110. But the Supreme Court has often held that the rule above announced is not applicable to ex parte proceedings in the United States Land Office, and that the finding of the land officers in such proceedings, although not open to collateral attack, is not conclusive against the government, when it sues to cancel the resulting patent upon the ground that it was obtained by means of false and fraudulent proofs. United States v. Minor, 114 U. S. 233, 5 Sup. Ct. 826, 29 L. Ed. 110; McCaskill Co. v. United States, 216 U. S. 504, 30 Sup. Ct. 386, 54 L. Ed. 590; Washington Securities Co. v. United States, 234 U. S. 76, 34 Sup. Ct. 725, 58 L. Ed. 1220. In the case last cited it was said that:

"No doubt those officers found from the proofs submitted to them that the lands were agricultural and not coal lands, for that was a prerequisite to issuing the patents; but the proceedings were not adversary in any true sense of the term. The applications and proofs of the entrymen were strictly ex parte. The government was not called upon to make any adverse showing, no issue was framed, no hearing was had, and no one represented the government, save in the sense that the land officers did so."

In the case at bar the hearing before the Commission to the Five Civilized Tribes was purely ex parte. The United States or the Creek Nation was not represented, and no issue was framed or tried.

From what has been said, it results that the decree below in favor of the lessees of the Iowa Land & Trust Company should be reversed, and the case remanded, with instructions to render a decree in favor of the United States against all defendants; and it is so ordered.

HOOK, Circuit Judge. I doubt that a deed or patent to a dead man is so utterly void that his heirs can convey no valid interest to

an innocent purchaser. The ancient ceremony at the transfer of land, which required a living grantee, does not prevail in this country, and the rule based on it should give way. So much for the case of the lessees. In other respects I concur in the foregoing opinion.