## UNITED STATES v. ATKINS et al.

## ATKINS et al. v. UNITED STATES et al.

(Circuit Court of Appeals, Eighth Circuit. November 13, 1920.)

### Nos. 5420, 5425.

1. **Indians ☞13—Adjudication by Dawes Commission adversary in nature and conclusive against collateral attack.**

   Proceedings by the Dawes Commission to determine who should be enrolled as citizens of the Five Civilized Tribes and what land should be allotted to each *held* adversary in nature and conclusive against collateral attack.

2. **Indians ☞13—Fraud alleged does not authorize review of Dawes Commission adjudication.**

   Where the Dawes Commission had found that a named person was a citizen of the Five Civilized Tribes and allotted land to him, the adjudication cannot be set aside upon ground that defendant had fraudulently omitted to inform the commission that the named person did not exist.

3. **Indians ☞13—Finding by Dawes Commission that a specified allottee existed is conclusive against collateral attack.**

   Where the Dawes Commission determined that an Indian allottee was alive on a specified date and entitled to enrollment, the decision is final and cannot be collaterally attacked on the ground that the allottee is a fictitious person.

Appeal from the District Court of the United States for the Eastern District of Oklahoma.

Bill by the United States against Minnie Atkins and others. From an adverse decree, the United States appeals, and defendants Nancy Atkins and others also appeal. Affirmed.

In Case No. 5420:

Paul Pinson, Sp. Asst. U. S. Atty., of Tulsa, Okl., and D. H. Linebaugh, Sp. Asst. to the Atty. Gen., of Muskogee, Okl. (Archibald Bonds, U. S. Atty., and J. C. Davis, Creek National Atty., both of Muskogee, Okl., on the brief), for the United States.

C. B. Stuart, of Oklahoma City, Okl., and Lee Bond, of Leavenworth, Kan. (E. C. Hanford, of Seattle, Wash., and M. K. Cruce, of Oklahoma City, Okl., on the brief), for appellees Folk and others.

Joseph M. Hill, of Ft. Smith, Ark., and Malcolm E. Rosser, of Muskogee, Okl., for appellees Atkins and others.

In Case No. 5425:

Joseph M. Hill, of Ft. Smith, Ark., and Malcolm E. Rosser, of Muskogee, Okl. (Napoleon B. Maxey, of Muskogee, Okl., and Henry L. Fitzhugh, of Ft. Smith, Ark., on the brief), for appellants.

C. B. Stuart, of Oklahoma City, Okl., and Lee Bond, of Leavenworth, Kan. (E. C. Hanford, of Seattle, Wash., on the brief), for appellees Folk and others.

Paul Pinson, Sp. Asst. to the U. S. Atty., of Tulsa, Okl., and D. H. Linebaugh, Sp. Asst. Atty. Gen., of Muskogee, Okl. (Archibald Bonds, U. S. Atty., and J. C. Davis, Creek National Atty., both of Muskogee, Okl., on the brief), for the United States.

Before HOOK and CARLAND, Circuit Judges, and VAN VALK-ENBURGH, District Judge.

VAN VALKENBURGH, District Judge. This case has been once before this court upon appeal from an order appointing a receiver. Some of the questions here presented were there discussed and ruled. The order appointing the receiver was reversed and set aside upon filing of bond in lieu thereof, and the case was remanded to the court below for further proceedings, not inconsistent with the views expressed in the opinion filed. Folk et al. v. United States of America et al., 233 Fed. 177, 147 C. C. A. 183. The main facts are succinctly stated by Judge Sanborn in that opinion.

One Thomas Atkins was listed for enrollment as a member of the Creek Tribe of Indians by the Dawes Commission on May 23, 1901, was duly enrolled as such a citizen by that commission, was on March 1, 1902, reported to the Secretary of the Interior to have been regularly listed for enrollment and enrolled by it, to have been one of the Creek citizens "living on the 1st day of April, 1899, or born to citizens so entitled to enrollment up to and including the 1st day of July, 1900, and then living," to have been found upon the 1895 authenticated Creek tribal roll, and to have been enrolled by it as No. 7913 on its roll, and a copy of the part of that roll containing his enrollment and the enrollment of some others was submitted with the report, which the commission closed with this statement:

"The Commission, after having thoroughly examined the rolls of the Creek Nation and such evidence as has been submitted, touching the identification of the persons on roll herewith submitted, is of the opinion that all are entitled to enrollment as Creek citizens by blood, and should be so enrolled."

The part of the roll so certified to the Secretary was approved by him, the land in the defendants' possession was allotted to Thomas Atkins, a certificate of allotment thereof to him was issued on June 30, 1902, patents therefor, dated April 14, 1903, approved by the Secretary on May 8, 1903, were issued to him and were recorded in the office of the commission on May 16, 1903. It appears, however, that such patents were not actually delivered. Under leases, certain of the defendants were in exclusive possession of the land in controversy, drilling wells and producing oil, when, on February 15, 1915, the United States, on its own behalf and on behalf of the Creek Tribe of Indians, brought this suit to cancel and avoid the enrollment of Thomas Atkins as a Creek citizen, the certificate of allotment, and the patents of the land to him, to perpetually enjoin him and all claiming under him from asserting any interest therein, or in the proceeds thereof, and for the appointment of a receiver pendente lite.

On September 17, 1915, an amended bill was filed, and September 12, 1916, a bill of complaint supplemental thereto. The complainant alleges that the Dawes Commission was charged with the duty of determining who were entitled, under the acts of Congress, to be enrolled as citizens of the Creek Nation, and no one was entitled to be so enrolled who was not living on April 1, 1899, that Thomas Atkins was not living on that day, "that no evidence of any character was

produced before, or obtained or had by, said commission with respect to the right of the alleged Thomas Atkins under said act of Congress to be so enrolled," and that in causing his name to be placed on the roll of Creek citizens by blood the commission acted arbitrarily and summarily, and without any knowledge, information, or belief that he was in existence or living or dead on April 1, 1899; further that the said enrolled and allotted Thomas Atkins was, and is, a distinctly mythical person, and consequently that the Dawes Commission was without jurisdiction to enroll that name or allot lands to him, and the patents in question were and are utterly void; further, that the commission, as a basis for the enrollment of the name of Thomas Atkins, used, as necessarily material evidence upon the question of the citizenship of Thomas Atkins, the 1895 pay roll containing his name; that that pay roll was false and fraudulent in so far as it contained that name; that the defendant Minnie Atkins caused it to contain said name, well knowing that it had no rightful place thereon, and concealed the fact that it represented a mythical person; that the proceedings of the Dawes Commission, resulting in said enrollment, were ex parte and subject to attack in this proceeding in equity. The supplemental bill presented the fact that the patents, though issued, had never been delivered, and prayed that this cause be not set down for trial until the Secretary of the Interior might assume and exercise in the premises a jurisdiction claimed still to exist in him over the subject-matter of the controversy.

In order that the issues presented to this court for determination may be more clearly defined, it is necessary to review somewhat the proceedings in the court below after the case had been remanded for trial upon the merits as heretofore stated. The condition of the record is thus succinctly presented by Judge Campbell, and for precision and clearness we quote from his memorandum opinion of December 1, 1917:

"At an early stage in the taking of testimony in this case, after the plaintiff [United States] had produced the greater part of the evidence upon which it relied as to just what transpired before the Dawes Commission in May, 1901, at Okmulgee, when Thomas Atkins was listed for enrollment, and when it proposed to enter upon that branch of the case which involved the offering of proof in support of its contention that Thomas Atkins never had any existence, the objection was made by counsel for the defendants Atkins, Page, and allied interests that such evidence was inadmissible, as being immaterial to any proper issue in the case. It was then urged that the evidence already adduced by the plaintiff, so far from establishing the charge that the Dawes Commission had enrolled Thomas Atkins without having any evidence upon the question as to whether he was living April 1, 1899, on the contrary, established that it had heard testimony upon this point. It was further urged in support of the objection that the government's proof also showed that the hearing before the Dawes Commission as to the right of Thomas Atkins to be enrolled was not ex parte as contended by the Government, but that the commission had acted as a quasi judicial body in listing for enrollment and enrolling Thomas Atkins as a member of the Creek Tribe, had heard evidence upon the things conditioning his right to enrollment, to-wit: as to his being a citizen by blood of the tribe, his residence with the tribe, and his having been living on April 1, 1899, and that his enrollment by the commission and the issuance of patents pursuant thereto amounted to a judgment of that tribunal conclusively determining in his favor these several questions of fact as against

any future collateral attack and against any direct proceeding to vacate or set aside such enrollment and patents except upon the grounds upon which the final judgment of a judicial or quasi-judicial tribunal may be attacked, that is, for such fraud or such mistake of law or fact as when established renders such judgments voidable. That the fraud charged against Minnie Atkins in relation to the procurement of the placing of the name of Thomas Atkins on the 1895 Creek Roll was not the character of fraudulent act for which the judgment of the commission could be attacked, in that, if it was fraud, it involved a matter in issue before the commission, and not an extrinsic or collateral matter. It was urged therefore that the question of the existence or non-existence of Thomas Atkins was necessarily involved in the question of his being alive or dead on April 1, 1899, and that question having been conclusively determined by the commission could not be retried in this court. The matter was then orally argued quite fully and the court, largely on the authority of Iowa Land & Trust Co. v. United States, 217 Fed. 11, 133 C. C. A. 121, overruled the objection and permitted the plaintiff to offer proof as to whether Thomas Atkins ever existed, to which issue, as afterward developed, has been addressed the greater part of the testimony making up the colossal record in this case.

"Just before the close of the taking of the testimony in the case, which consumed more than a month, the opinion of the Supreme Court of the United States in United States v. Wildcat et al., 244 U. S. 111, 37 Sup. Ct. 561, 61 L. Ed. 1024, commonly known as the "Barney Thlocco" Case, was rendered, involving the question of the finality of the action of the Dawes Commission in enrolling Creek Citizens and the issuance of patents to them or in their names. In the light of this decision, counsel renewed their objection above referred to, and the court decided to reopen this question of law and permit counsel to brief the same, and to further consider that question preliminary to the consideration of other features of the case. There was an effort on the part of the government to secure a rehearing of the Thlocco Case by the Supreme Court, but the court is now advised that this has been denied, so that the case stands as authority. Counsel for plaintiff in their brief say:

"'Even if we had proceeded with the trial of the case with the contention that the commission acted arbitrarily, and without evidence as to the right of Thomas Atkins to be enrolled, we would now be foreclosed with respect to that contention, by reason of the decision in the Barney Thlocco Case; but we were not unmindful of the view which this court took of the issue of fact raised in that case, and, in point of fact, we proceeded to try this case upon the following propositions, presented by our pleadings, namely:

"'First. That the enrolled and allotted Thomas Atkins was, and is, a distinctly mythical person; consequently, that the Dawes Commission was without jurisdiction to enroll that name or allot lands to him, and the patents were, and are, utterly void. This proposition is presented in the amended bill of complaint as the third ground for the relief prayed for, and calls for no impeachment of the judgment of the commission, save only in so far as proof of the utter nonexistence of the enrollee and patentee operates absolutely to impeach and destroy that judgment and the resultant patents. (See paragraph VII of the amended bill of complaint.)

"'Second. That the commission, as a basis for the enrollment of the name of Thomas Atkins, used, as absolutely necessary—hence, necessarily material—evidence upon the question of the citizenship of Thomas Atkins, the 1895 pay roll containing his name, and that that pay roll was false and fraudulent in so far as it contained that name; that the defendant Minnie Atkins caused it to contain said name, well knowing that it had no rightful place thereon, and concealed the fact that it represented a mythical person; that her concealment of that fact has continued from that day to this, and she is now attempting to reap the benefits growing out of the Dawes Commission enrollment, which resulted from the ex parte proceeding wherein said false tribal roll was used as aforesaid. (See paragraph V of the amended bill of complaint.)'

"In view of this admission and the evidence offered by the government itself, we start with the established proposition that the government has

failed to discharge the burden which rested upon it to establish by the evidence that the commission acted arbitrarily and without evidence as to the right of Thomas Atkins to be enrolled, which involved, as we have seen, the questions of his Creek blood, his residence in the tribe, and his having lived up to and including April 1, 1899. Therefore, unless the action of the commission may be attacked in this proceeding on the theory that notwithstanding its findings Thomas Atkins was in fact a myth and never existed, and that Minnie Atkins, in having him placed upon the 1895 Creek Roll as a person then in being, and permitting the commission to consider said roll as evidence of his existence and Creek citizenship, without apprising the commission of its falsity, practiced such fraud upon the commission as renders its judgment voidable in this proceeding; or on the theory alone that Thomas Atkins was in fact a myth, and that therefore, notwithstanding its attempted action, the commission was without jurisdiction to enroll his name or allot land in his name, and that hence its action is a nullity, the title to the land still remaining in the Creek Nation, and pretended patents being clouds thereon, the objection to the introduction of evidence was well taken, and as a matter of law the plaintiff must fail in this case. Its right to make this proof the plaintiff bases upon these three propositions as appears from the brief:

"I. 'The proceedings before the commission were ex parte.'

"II. 'The particular charge of fraud in this case, if sustained, entitles the complainant to the relief prayed for.'

"III. 'A patent to a fictitious person is, in legal effect, no more than a declaration that the government thereby conveys the title to no one, and the judgment on which it is based is a nullity, for want of jurisdiction in the Dawes Commission to render it.' "

It thus appears that, in view of the decision of the Supreme Court in United States v. Wildcat et al., supra, complainant abandoned its contention that the commission acted arbitrarily, and without evidence as to the right of Thomas Atkins to be enrolled, and proceeded to try its case thereafter upon the propositions numbered first and second, as quoted. The court below stated the three propositions upon which the plaintiff based its right to make proof in support of its contention that Thomas Atkins was a myth and never had any existence in fact. While the court sustained the objection of defendants upon these propositions, it must be remembered, however, that plaintiff had already tendered full proofs upon this issue, to which was addressed the greater part of the testimony making up this record of approximately 5,000 pages.

But still further, in their brief in this court, counsel for the government say:

"We do not now urge that Minnie Folk (née Atkins) committed any fraud upon the tribe, because we are unable to show that she caused the name Thomas to be placed upon the roll; nor do we believe she drew any money for the fictitious being represented by that name; nor can she be charged with any fraud upon the Dawes Commission, except the fraud of omission to inform that body of the nonexistence of Thomas. We shall not discuss the fraud allegations and proof, however, nor the character of the proceedings before the Dawes Commission resulting in this enrollment. We believe the question whether fraud was practiced in the enrollment proceedings is immaterial here."

[1] It will thus be seen that counsel for the government, both in brief and argument, in substance abandon all other contentions and rely upon the single proposition that—

"A patent to a fictitious person is, in legal effect, no more than a declaration that the government thereby conveys the title to no one, and the judgment on which it is based is a nullity for want of jurisdiction in the Dawes Commission to render it."

And, as incident thereto, that Thomas Atkins was, in fact, a mythical person. We say this because there can no longer be reasonable insistence that the proceedings before the Dawes Commission were ex parte. Those proceedings were adversary in their nature, and the adjudication of the commission of who should be enrolled as citizens and freedmen of the Five Civilized Tribes, what land should be allotted each, and in what way, and of every issue of law and fact necessary for it to determine, in order to decide such questions, is conclusive and impervious to collateral attack. Malone v. Alderdice, 212 Fed. 668, 129 C. C. A. 204; Folk v. United States, 233 Fed. 177, 147 C. C. A. 183; United States v. Wildcat et al., 244 U. S. 111, 37 Sup. Ct. 561, 61 L. Ed. 1024.

[2] The allegation of fraud upon the tribe is abandoned, and it is conceded in brief and argument that Minnie Folk cannot be charged with any fraud upon the commission, "except the fraud of omission to inform that body of the nonexistence of Thomas." Such fraud, even though it existed, falls clearly within the rule announced in United States v. Throckmorton, 98 U. S. 61, 25 L. Ed. 93, and Vance v. Burbank, 101 U. S. 514, 25 L. Ed. 929. In the latter case it was said:

"It has also been settled that the fraud in respect to which relief will be granted in this class of cases must be such as has been practiced on the unsuccessful party, and prevented him from exhibiting his case fully to the department, so that it may properly be said there has never been a decision in a real contest about the subject-matter of inquiry. False testimony or forged documents even are not enough, if the disputed matter has actually been presented to or considered by the appropriate tribunal."

It devolved upon the commission, in the proceeding to which the citizen claiming the right to enrollment and allotment on the one side and the Creek Nation on the other side were adverse parties in contemplation of law, to determine whether Thomas Atkins was "living on the 1st day of April, 1899, or born to citizens so entitled to enrollment up to and including the 1st day of July, 1900, and then living." This necessarily involved the question of whether he was a real or mythical person; since, of course, no mythical person could have been "living" on the dates mentioned. When the Dawes Commission determined that he was such a living person and entitled to enrollment, it decided the very crucial question involved in this proceeding—an issue of law and fact which was indispensable and necessary for it to determine in order to decide the matters exclusively confided to it and upon which its judgment is made final. As a result of the process of elimination, disclosed by the record as hereinabove stated, of some of the original propositions advanced by the government, and of the conclusive determination of others adversely to the government by the authoritative decisions of the Supreme Court of the United States and of this court, practically the only remaining question with which we have to deal is whether the court below erred in sustaining the contention of the defendant Minnie Folk, formerly Minnie Atkins, that the United States

should not be permitted to retry the issue of whether her alleged son, Thomas Atkins, was living on April 1, 1899, on the ground that he was a fictitious or mythical person, and, as an incident thereto, whether, under the facts disclosed by this record, that error, if it be one, was substantially prejudicial.

The government, to sustain its proposition, relies almost entirely upon the decision of the Supreme Court of the United States in Sampeyreac v. United States, 7 Pet. 222, 8 L. Ed. 665. This case was brought under a special act of Congress passed May 8, 1830 (4 Stat. 399), for the express purpose of enabling the court in Arkansas having cognizance of claims under a former act—

"to proceed by bills of review, filed, or to be filed, in the said court, on the part of the United States, for the purpose of revising all or any of the decrees of the said court in cases wherein it shall appear to the said court, or be alleged in such bills of review, that the jurisdiction of the same was assumed, in any case, on any forged warrant, concession, grant, order of survey, or other evidence of title."

In the absence of this enabling act of 1830, and the authority thereby conferred, it was evidently believed that jurisdiction for the purpose stated was wanting. In such case, the scope of the act must necessarily be confined to the subject-matter recited and the grounds for relief stated therein.

In the Sampeyreac Case forgery was present and was the foundation of the action. Of course, closely interwoven with this was the further conceded fact, and not, as here, the contested fact, that Sampeyreac was a fictitious person, and, consequently, all deeds or other muniments of title purporting to emanate from him must, in the nature of things, have been forgeries. Conceding the express right to review and revise on the ground of forgery, the evidence thereof, including the evidence of the non-existence of a grantor and litigant, would be clearly admissible. And the act in question conferred not only the right to review decrees, but the right to relitigate issues involved in such decrees. But, if the general rules governing the jurisdiction of a court of equity, in the absence of such express legislation, forbid both the review of such decrees and the relitigation of such issues in a collateral proceeding, then, clearly, the evidence offered in support thereof must be denied.

In United States v. Flint, Case No. 15,121, 25 Fed. Cas. 1107, before Field, Circuit Justice, Sawyer, Circuit Judge, and Hoffman, District Judge, the Sampeyreac Case is thus distinguished from normal procedure under recognized equity rules:

"In the Case of Sampeyreac, 7 Pet. (32 U. S.) 222, which is the only reported case where a re-examination was made, it was done by virtue of a special act of Congress, which authorized the proceeding, not before the ordinary tribunals, but by bill of review in the special tribunal upon which the original jurisdiction over the cause had been conferred. Whether or not by virtue of that jurisdiction it might have entertained a bill of review to set aside its own decree, the Supreme Court does not decide. An act of Congress seems to have been deemed necessary to confer the authority. But it is nowhere intimated that any court of equity powers, but upon which no authority to pass upon the validity of claims of that description had been conferred, could have entertained such a bill, or in any other form have

re-examined the questions finally decided by the special tribunal. * * *
It is not necessary to assert that, where a fraudulent title has been confirm-
ed, the United States is entirely without remedy, nor that the political depart-
ment of the government may not, if it sees fit, invest the courts with author-
ity to re-examine the questions which, as the law now stands, remain finally
decided in these cases.    But, until Congress has so expressed its will and
conferred the requisite authority, it may confidently be affirmed that the
ordinary tribunals are without jurisdiction."

In the case at bar the existence of the allottee, Thomas Atkins,
was a litigated question before the Dawes Commission, a quasi judi-
cial tribunal established by act of Congress for the explicit purpose of
quieting these questions of Indian title, whose decisions, by the ex-
press provisions of that act, were made final, conclusive and impervi-
ous to collateral attack either by the Creek Nation, the United States,
or any other party in interest. The judgment of the commission es-
tablished beyond peradventure that Atkins was not a fictitious per-
son, but was alive April 1, 1899, and was therefore legally enrolled.
It matters not that the proceedings of the commission were less formal
than in the regular law courts of the country, nor that it necessarily
must have made mistakes in the discharge of its duties. The princi-
ple involved remains unchanged. The rule applicable to the setting
aside of decrees for fraud of the nature here presented has been well
established by many pronouncements of the Supreme Court and of this
court. United States v. Throckmorton, 98 U. S. 61, 25 L. Ed. 93;
Vance v. Burbank, 101 U. S. 514, 25 L. Ed. 929; United States v.
Wildcat et al., 244 U. S. 111, 37 Sup. Ct. 561, 61 L. Ed. 1024; Malone
v. Alderdice et al., 212 Fed. 668, 129 C. C. A. 204. It is a rule founded
upon reason and substance. It is essential to a seemly end to litigation.
It involves the very notion of repose and quietude that is embraced
within the purpose of the act of Congress making the decision of the
Dawes Commission final, conclusive, and impervious to collateral
attack, except under the circumstances and conditions prescribed and
recognized in the practice and procedure in equity. It follows that
the action of the court below in sustaining the objection to the gov-
ernment's offer of proof in support of its contention that Thomas At-
kins was a fictitious person was right, and must be sustained.

[3] But independently of this conclusion, it would seem that upon
the merits the government can fare no better, and this involves Nancy
Atkins, appellant in case No. 5425. This record of approximately
5,000 pages presents an "irrepressible conflict," and if any appellate
court is ever concluded by the findings of a chancellor upon facts
sufficiently substantial to support them, and such is and should be the
uniform rule of decision, this case falls peculiarly within that rule.
It may be that mistakes have been made. Taking into consideration
the environment, subject-matter, and personnel of the witnesses and
parties involved, it may be conceded that, in this class of cases, exact
justice is difficult of attainment; but I apprehend Congress was fully
aware of this situation, as affecting these Indian titles, when it con-
ferred such complete authority upon the Dawes Commission and clothed
its decisions with such presumption of verity. As has been stated, the
government produced its evidence fully before the court. The de-

fendants introduced testimony without let or hindrance. The resident judge, admirably equipped, by training and experience, to discharge the onerous duty which devolved upon him, patiently and conscientiously heard and considered the evidence produced in the course of a hearing which consumed more than a month. He saw most of the witnesses upon the stand, and had opportunity to note their demeanor and to weigh their testimony. His findings are amply sustained by the record, and should not be set aside by this court. To attempt a comprehensive review of the evidence contained in this extended record would be impracticable, and would serve no useful purpose. It is sufficient that we have reached the same conclusions as did the trial judge upon the issues of fact.

It results that the decree should be sustained and affirmed. It is so ordered.